636 So.2d 127 (1994)
Anthony CLOUGH, Appellant/Cross-Appellee,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellee/Cross-Appellant.
No. 93-1488.
District Court of Appeal of Florida, Fifth District.
April 22, 1994.
Charles R. Stack of High, Stack, Lazenby, Palahach, Maxwell & Morgan, Melbourne, for appellant/cross-appellee.
Dennis R. O'Connor and David B. Falstad of Gurney & Handley, P.A., Orlando, for appellee/cross-appellant.
COBB, Judge.
The primary issue on this appeal is whether, as a condition precedent to the initiation of a first party bad faith action, a claimant to underinsured motorist benefits must establish via jury verdict the exact *128 amount of his damages in excess of the applicable coverage or whether it is sufficient for the parties (the claimant and the carrier) to simply stipulate that the claimant's damages exceed the maximum available underinsured motorist coverage. The trial judge held, and we agree, that the stipulation serves as a sufficient basis for any subsequent bad faith action and that the exact amount of the damages can be determined in that action.
Clough (claimant) was seriously injured in 1990 when a motorcycle he was operating was struck by one vehicle and then he himself was struck by a second vehicle. His damages exceeded both tortfeasors' liability policy limits, which were tendered to and accepted by the claimant. He then demanded underinsured motorist benefits from the defendant, Government Employees Insurance Company (GEICO) (carrier), which had in force an automobile insurance policy on two vehicles owned by the claimant's mother. The claimant, as a resident of his mother's household, claimed entitlement to underinsured benefits. The carrier denied coverage based on the following exclusion in its policy:
2. Bodily injury to an insured while occupying or through being struck by an uninsured auto owned by an insured or a relative is not covered.
Following denial of coverage, the claimant filed the instant action against the carrier claiming entitlement to underinsured motorist benefits of $20,000, $10,000 for each vehicle. The carrier answered, admitted that the claimant was a resident of its named insured's household and that the policy was in force and effect at the time of his accident. The carrier further admitted that the two tortfeasors negligently caused the accident and that the claimant suffered damages sufficient to encompass the $20,000 in underinsured motorist benefits claimed. However, the carrier asserted that the above quoted exclusion applied to preclude coverage because the claimant was injured while occupying his uninsured motorcycle.
The trial court granted partial summary judgment in favor of the claimant on the issue of coverage and ruled that the cause should proceed to trial on the issue of damages. The claimant then amended his complaint to allege two accidents had actually occurred and that he was thus entitled to a total of $40,000 in uninsured benefits. The carrier filed an amended answer admitting that the claimant suffered damages sufficient to encompass $40,000 in uninsured benefits if the claimant was entitled to such benefits under the terms and conditions of the policy and if the court determined two separate accidents had occurred. The parties' pretrial statements reveal that the issues for trial were whether the claimant was involved in two accidents and whether the claimant had to obtain a jury verdict against the carrier prior to obtaining underinsured benefits.
The carrier moved for summary judgment asking the court to determine whether the plaintiff had been involved in two separate accidents. The carrier further asked the court to rule that the plaintiff was not entitled to a jury trial on damages in light of the concession in its answer. At the summary judgment hearing, the carrier stipulated that the claimant's injuries were caused by two separate accidents within the meaning of the insurance policy. The parties also stipulated that the claimant's damages exceeded the maximum available underinsured motorist coverage of $40,000 plus the amounts previously paid by the two tortfeasors. The trial court entered summary judgment, finding as follows:
1. (a) The Defendant, GEICO, is entitled to Summary Judgment on the question of whether the Plaintiff must first obtain a jury verdict prior to obtaining benefits pursuant to the subject policy. The Court finds that the Plaintiff does not have a right to proceed to trial in light of the aforementioned stipulations, as well as the Defendant's tender of its maximum policy limits of $40,000.00, and therefore strikes and removes this cause from the Court's trial docket;
(b) The Court does find, however, based upon the aforementioned stipulations that the Plaintiff is entitled to Summary Judgment in his favor in the amount of $40,000.00 representing the maximum amount of underinsured motorist policy limits available to the Plaintiff from the Defendant, GEICO.

*129 2. The court does not resolve whether the Plaintiff is entitled to pursue a claim of bad faith, pursuant to F.S. 624.155.
3. Based upon the foregoing, the Court entered Judgment for the Plaintiff in the amount of Forty Thousand Dollars ($40,000.00), plus interest, for which sum let execution issue.
The claimant moved for rehearing asserting that under existing case law, he was required to obtain a verdict on the issue of the amount of damages that he had sustained prior to instituting an action for bad faith. The court denied that motion and this appeal ensued.
The basis for this appeal is the claimant's desire to ultimately pursue a first party bad faith action against the carrier resulting from the latter's refusal to pay underinsured benefits upon demand. The claimant asserts that case law holds that a condition precedent to institution of such an action is a jury determination of a plaintiff's damages in excess of the applicable insurance limits.
Two types of causes of action for bad faith exist, first party and third party bad faith. Third party bad faith consists essentially of conduct of a liability insurer which exposes its insured to an excess judgment when the insurer could have and should have settled the claim against its insured within the policy limits. See Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla. 1971).
First party actions consist of the insurer's wrongful refusal to settle a claim accruing directly to its own insured, such as a PIP claim or an uninsured/underinsured motorist claim. At common law, Florida courts refused to recognize a first party bad faith cause of action, but the cause of action was legislatively created in 1982 by enactment of section 624.155, Florida Statutes. Thus, by statute an insured may pursue a first party bad faith action against the insured's uninsured/underinsured motorist carrier. Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289 (Fla. 1991); Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla.5th DCA 1987), rev. denied, 523 So.2d 578 (Fla. 1988).
As a result of section 627.727(10), Florida Statutes, adopted effective July 7, 1992, and specifically made applicable to all bad faith causes of action accruing after the 1982 effective date of section 624.155, Florida Statutes, an insured may now recover full damages sustained as a result of a tortfeasor's conduct, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of the State of Florida. This total amount of damages is recoverable whether they were caused by an insurer or by a third party tortfeasor.
In Blanchard, the supreme court held that an insured's claim against its uninsured motorist carrier for failure to settle an uninsured motorist claim in good faith does not accrue before conclusion of the underlying litigation for contractual uninsured motorist benefits so that the insured need not allege a bad faith claim in the suit for uninsured motorist benefits. The court explained:
If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim. Thus, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle. (Emphasis added).
575 So.2d at 1291.
Thus, in Imhof v. Nationwide Mut. Ins. Co., 614 So.2d 622 (Fla. 1st DCA), rev. granted, 626 So.2d 1367 (Fla. 1993), the First District held that under Blanchard, the trial court correctly dismissed the plaintiff/insured's bad faith action against the uninsured/underinsured *130 motorist carrier for failure to state a cause of action where the complaint alleged a failure to timely settle and ultimate settlement of $10,000, but there was no determination of "the extent of the plaintiff's damages." In Michigan Millers Mut. Ins. Co. v. Bourke, 581 So.2d 1368 (Fla. 2d DCA 1991), the Second District, relying on Blanchard, held that a bad faith claim arising out of a dispute over uninsured motorist benefits could not proceed before termination of the underlying contractual litigation wherein liability, and the extent of the insured's damages are determined.
The defendant insurer here admitted that the tortfeasors were liable and, according to the summary judgment, stipulated that the claimant's damages greatly exceeded the available insurance. However, the claimant reads Blanchard, Imhof and Michigan Millers, as requiring that the exact extent of his damages be established as a condition precedent to his institution of a bad faith action.
While Blanchard does hold that in ordinary circumstances, an insured must obtain a judgment in excess of the policy limits before prosecuting a first party bad faith claim, it is clear that it is the establishment of the fact that such damages were incurred and not their precise amount which forms the basis for a subsequent first party cause of action for bad faith. There is no sound reason for refusing to allow parties to stipulate to damages in excess of available policy limits in the underlying litigation and then pursuing a bad faith claim wherein, at the appropriate point, the precise amount of such damages can be determined. Indeed, the recent decision in Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179 (Fla. 1994), reflects that at least in a third party bad faith action, parties may by stipulation agree to try the bad faith action before resolution of the underlying tort claim.
In that case the court explained:
Under ordinary circumstances, a third party must obtain a judgment against the insured in excess of the policy limits before prosecuting a bad-faith claim against the insured's liability carrier. See Blanchard v. State Farm Mut. Auto. Ins., 575 So.2d 1289 (Fla. 1991) (announcing analogous rule to that of a first-party bad-faith claim). However, even if a complaint were filed asserting a bad-faith claim against a liability insurance company without alleging the existence of a judgment against the insured in excess of the policy limits, the most that could be said would be that the complaint failed to state a cause of action. While the complaint in the instant case did not allege an excess judgment, the stipulation between the parties dispensed with the necessity of that requirement. The stipulation was the functional equivalent of an excess judgment....
This Court has looked with favor upon stipulations designed to simplify, shorten, or settle litigation and save costs to parties. Such stipulations should be enforced if entered into with good faith and not obtained by fraud, misrepresentation, or mistake, and not against public policy. [Citations omitted].
630 So.2d at 181.
While Cunningham was a third party bad faith case, its rationale is applicable to a first party action. Consequently, the trial court was correct in denying the plaintiff the right to proceed in the instant action to establish a predicate for a subsequent bad faith action since that has already been accomplished by the stipulation of the parties.
We also agree with the trial judge in respect to the issue raised on cross-appeal  i.e., whether a motorcycle is encompassed by the term "uninsured auto" in an exclusion in an insurance policy. The policy, issued to the claimant's mother, provides that uninsured/underinsured motorist coverage is not available for:
Bodily injury to an insured while occupying or through being struck by an uninsured auto owned by an insured or a relative is not covered.
The plaintiff resided in his mother's household at the time of the accident. The carrier asserted that the claimant's motorcycle, which he owned and operated at the time of the accident, constituted an "uninsured auto" because it was not listed in the insurance policy issued to his mother.
*131 It is well settled that an insurance exclusion must be narrowly construed and be construed in favor of coverage. Kirsch v. Aetna Casualty and Sur. Co., 598 So.2d 109 (Fla. 2d DCA 1992). The exclusion at issue does not mention motorcycles but rather refers to uninsured "autos." No definition of "autos" as encompassing motorcycles or other two wheel vehicles appears in the policy. Compare Dorrell v. State Fire & Casualty Co., 221 So.2d 5 (Fla. 3d DCA 1969) (defining automobile to mean "a land motor vehicle"). In Valdes v. Prudence Mut. Casualty Co., 207 So.2d 312 (Fla. 3d DCA 1968), the Third District ruled that the word "automobile" in an "occupying an automobile other than an insured automobile" exclusion from uninsured motorist coverage did not encompass a motor scooter.
The insurer relies on Grant v. State Farm Fire and Casualty Co., 620 So.2d 778 (Fla. 4th DCA 1993), rev. granted, 630 So.2d 1099 (Fla. 1993), wherein the Fourth District held that a motorcycle owned by the named insured but not insured under the liability policy was a "motor vehicle" as that term was used in an "other owned vehicle" exclusion from uninsured motorist coverage.[1] The Third District ruled to the contrary in Petersen v. State Farm Fire and Casualty Co., 615 So.2d 181 (Fla. 3d DCA), rev. granted, 623 So.2d 495 (Fla. 1993), holding that the term "motor vehicle" as used in the uninsured motorist exclusion was ambiguous and must be construed against the insurer on a claim arising from a motorcycle accident. These cases are distinguishable from the instant case where the policy exclusion uses the term "auto" which is narrower in scope than the broader "motor vehicle." The term "auto" here used in the uninsured motorist exclusion did not encompass a motorcycle. Thus, the exclusion for being injured while occupying an "uninsured auto" owned by an insured is inapplicable.[2]
AFFIRMED.
W. SHARP, J., concurs.
HARRIS, C.J., concurs in result only.
NOTES
[1] The Fourth District pointed out that Chapter 324, Florida Statutes, our financial responsibility law, defines "motor vehicle" as "every self-propelled vehicle which is designed and required to be licensed for use upon a highway... ." § 324.021(1), Fla. Stat. This clearly includes motorcycles. 620 So.2d at 779-780.
[2] Because the exclusion is inapplicable to the instant situation, the fact that such an exclusion does not contravene public policy is irrelevant to the instant case. See World Wide Underwriters Ins. Co. v. Welker, 19 Fla. L. Weekly § 153, ___ So.2d ___ (Fla. March 31, 1994), disapproving Nationwide Mut. Fire Ins. Co. v. Phillips, 609 So.2d 1385 (Fla.5th DCA 1992).