640 So.2d 110 (1994)
Daniel C. BROOKINS, as Personal Representative of the Estate of Connie Marie Brookins, deceased, Appellant,
v.
Homer GOODSON, as Personal Representative of the Estate of Michael Joseph Goodson, deceased, and State Farm Mutual Automobile Insurance Company, Appellees.
No. 93-0717.
District Court of Appeal of Florida, Fourth District.
July 20, 1994.
*111 Michael J. Doddo of Michael J. Doddo, P.A., Fort Lauderdale, for appellant.
James K. Clark of Clark, Sparkman, Robb & Nelson, Miami, for appellee-State Farm.
PARIENTE, Judge.
The trial court dismissed appellant's (insured's) first party bad faith action for lack of subject matter jurisdiction because the underlying litigation of the underinsured motorist claim was settled without a trial. Because we hold that the resolution of the underlying underinsured motorist claim by payment of the policy limits does not preclude the insured from pursuing a first party bad faith claim against his insurer, we reverse the dismissal of the complaint.
The claim in this case arose out of the wrongful death of the insured's minor daughter who was killed when she was a passenger in an underinsured vehicle. The tortfeasor had policy limits of $10,000 and the insured *112 had uninsured/underinsured motorist benefits of $100,000. The death occurred on October 1, 1988 and the insurer was notified of the claim three months later. In March 1989, the insured made a demand for payment of the policy limits, but the insurer failed to acknowledge coverage or failed to make any offer of settlement. As a result, the insured filed a Civil Remedy Notice of Violation pursuant to section 624.155, Florida Statutes (Supp. 1988), alleging the insurer's bad faith failure to settle for the policy limits. The insurer responded that it denied payment because the settlement demand was premature. Thereafter, the insured commenced litigation against the insurer, and in September 1989, the insurer tendered its policy limits.
The insured alleges he preserved his right to pursue the bad faith claim as a condition of accepting the underinsured motorist policy limits. He claims that appellee's (insurer's) dilatory conduct in paying the policy limits constitutes a basis for a first party bad faith claim under section 624.155(1)(b)(1), Florida Statutes (Supp. 1988).[1]
An insurer acts in bad faith in violation of section 624.155(1)(b)(1) by:
Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests
Although section 624.155 does not distinguish between first party and third party bad faith, first party bad faith is entirely a statutory creation. McLeod v. Continental Co., 591 So.2d 621 (Fla. 1992).
The supreme court has recently held that to state a cause of action for first party bad faith there must be an allegation that there has been a determination of the insured's damages. Imhof v. Nationwide Mut. Ins. Co., 19 Fla. L. Weekly S257, 1994 WL 178132 (Fla. May 12, 1994). The court did not, however, require that the damages be determined by litigation, that there be an allegation of a specific amount of damages or that the damages be in excess of the policy limits. The court was not faced with the circumstance presented here where the policy limits are subsequently tendered by the insurer. The insured in Imhof received an award of damages through arbitration of an amount less than the policy limits. The amount or extent of damages was held not to be determinative of whether an insured could bring a first party bad faith claim; the purpose of the allegation concerning a determination of damages was to show that "Imhof had a valid claim." Id. at S257, 1994 WL at *2.
We hold that the payment of the policy limits by the insurer here is the functional equivalent of an allegation that there has been a determination of the insured's damages. It satisfies the purpose for the allegation  to show that the insured had a valid claim.
The focus in first party bad faith actions is whether the insured's failure to promptly settle constitutes bad faith. Justice Harding noted the purpose of section 624.155:
Section 624.155 follows longstanding public policy and promotes quick resolution of insurance claims. In the instant case, the record indicates that Nationwide ignored Imhof's attempts to settle for about one year. The amount of the arbitration award shows that Imhof had a valid claim. Imhof thus had a legitimate interest in a speedy resolution of his claim. By failing to respond to Imhof, Nationwide flouted the very purposes of section 624.155.
Id.
The only way for an insurer to avoid an action being brought for statutory bad faith is set forth in section 624.155(2)(d), Florida Statutes (Supp. 1988) which provides:
No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.
It follows that an insurer cannot escape liability for a violation of section 624.155 by the *113 simple expedient of a belated payment of the policy limits after the 60 day time period provided in section 624.155(2)(a) has expired. The belated payment by the insurer neither automatically proves nor disproves first party bad faith. The insured must still establish that the insurer's failure to pay the policy limits by the expiration of the 60 day window period constituted bad faith as defined by statute.
In requiring a determination of damages as a predicate to a first party bad faith cause of action, the Imhof court reaffirmed the principles of Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289 (Fla. 1991), which required resolution of the underlying claim for uninsured motorist benefits before a bad faith claim accrued. In Blanchard, the issue was whether the plaintiffs had "split their cause of action" by not asserting the bad faith claim in the original suit for contractual uninsured motorist benefits. In rejecting the notion advanced by the insurer that the two causes of action should be brought simultaneously, the court held that resolution of the underlying claim in favor of the insured was a necessary predicate to a bad faith claim:
If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim. Thus, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. (Emphasis supplied.)
Id. at 1291. It was in this context that the court stated:
It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle.
Id.
Neither in Blanchard nor more recently in Imhof does the supreme court suggest that the required resolution of the insured's underlying claim must be by trial or arbitration. The bad faith statute imposes no requirement of a prior judgment as a condition precedent to a bad faith claim. Securing a judgment or an excess judgment is not directly related to the basis of an insurer's liability for first party bad faith. However, as noted in Blanchard, a resolution of some kind in favor of the insured is a prerequisite. There was a favorable resolution here.
Unlike statutory first party bad faith, third party common law bad faith consists of conduct by a liability insurer which exposes its insured to an excess judgment when the insurer could have and should have settled the claim against its insured within the policy limits. If the insurer effects a settlement with the injured plaintiff on behalf of its insured, which includes a release, a third party cause of action is eliminated. See Fidelity and Cas. Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985). The excess judgment is against the tortfeasor and thus the tortfeasor is in effect damaged as a result of the excess judgment in common law third party bad faith.
In a first party bad faith claim, the "insured is not injured by the excess judgment amount." McLeod, 591 So.2d at 624. First party actions consist of the insurer's wrongful refusal to settle a claim accruing directly to its own insured, such as a PIP claim or an uninsured/underinsured motorist claim. For this reason, the supreme court in McLeod would not permit an insured to recover the amount of the excess judgment as an element of damages in a first party bad faith case, but recognized the insured's right to recover other consequential damages resulting from the insurer's bad faith. These damages include interest, court costs and reasonable attorney's fees incurred in both the bad faith litigation and in the resolution *114 of the underlying claim as a result of the insurer's conduct in delaying payment.
Subsequent to McLeod, the legislature amended section 627.727 to permit a first party insured in a bad faith claim under section 624.155 to recover as damages "the amount in excess of the policy limits" and to specify that "the total amount of the claimant's damages are recoverable whether caused by an insurer or by a third-party tortfeasor." § 627.727(10), Fla. Stat. (Supp. 1992).[2] Subsection (10) supersedes McLeod only to the extent of recognizing explicit statutory authority for awarding excess judgment damages as part of the insured's damages in a first party bad faith claim.
We reject the insurer's argument that as a result of the addition of subsection (10), an excess judgment is now a prerequisite to a statutory bad faith cause of action. This statutory amendment expands the insured's potential recoverable damages. It does not change the nature of the underlying statutory bad faith cause of action set forth in section 624.155 for failure to settle which focuses on the insurer's refusal to timely and promptly settle with its insured when presented with the opportunity.
In this case the insured will be able to allege that there has been a determination of the tortfeasor's liability by virtue of the settlement with the tortfeasor. Just as a resolution of the tortfeasor's liability does not require litigation, a resolution of damages as a condition precedent to a bad faith claim can also be satisfied without litigation. Imhof clarified that an award in excess of the policy limits is not a prerequisite to a first party bad faith claim. If, as in Imhof, an arbitration award for less than the policy limits suffices to establish the requirement that the insured had a valid claim, surely the payment of the policy limits in this case satisfies the same requirement. By settling for the policy limits, the insurer has in effect conceded that the insured had a valid claim and the insured's damages have a minimum value set at the amount of the policy limits. The settlement resolves the underlying litigation for contractual uninsured motorist insurance benefits. Blanchard. It does not foreclose the bad faith claim.
This rationale is analogous to the line of cases which hold that an insured is still entitled to statutory attorney's fees in a lawsuit for insurance benefits, even when the lawsuit is settled before entry of final judgment. Wollard v. Lloyd's & Companies of Lloyd's 439 So.2d 217 (Fla. 1983). Speaking for the court, Justice Ehrlich refused to read section 627.428 literally to require the rendition of a judgment:
When the insurance company has agreed to settle a disputed case, it has, in effect, declined to defend its position in the pending suit. Thus, the payment of the claim is, indeed, the functional equivalent of a confession of judgment or a verdict in favor of the insured.
Id. at 218. The court, in quoting with approval from the fourth district opinion in Cincinnati Ins. Co. v. Palmer, 297 So.2d 96, 99 (Fla. 4th DCA 1974), found it "neither reasonable nor just" that an insurer can avoid its statutory liability "by the simple expedient of paying the insurance proceeds to the insured or beneficiary at some point after suit is filed but before final judgment is entered... ." Wollard, 439 So.2d at 218. The court was avoiding a literal reading of the statute which would exalt "form over substance to the detriment of public policy" stating that "such a result is clearly absurd." Id.
Similarly, engrafting a judicial requirement that a determination of damages by litigation must precede a first party bad faith claim would foster no stated legislative purpose, would lead to an absurd result and would needlessly increase the costs of litigation to both sides by requiring the insured to litigate the underlying action to conclusion. The result would foster litigation rather than promote settlement  it would promote form over substance. An insured, who may have *115 suffered damages as a result of the insurer's delay in payment, should not be penalized by being legally compelled to forego a bad faith claim when accepting a settlement.[3]
If an insurer determines that a case should be settled after the expiration of the 60 day statutory period, an insurer should be encouraged to settle even if the insured will not condition the settlement on a release of the bad faith claim. The insurer would still be mitigating its damages if the insured was successful in the subsequent bad faith case, by reducing the amount of interest, costs and attorney's fees. An insurer may also be able to utilize the fact of its voluntary payment of the policy limits to defend the bad faith claim by explaining why it was unable in good faith to tender its limits earlier.
The insured has also argued here that the insurer agreed to pay the policy limits and allow the insured to pursue the bad faith claim. Essentially this would amount to an agreement or stipulation that the insurer waived the requirement that the extent of the insured's damages be determined by litigation as a prerequisite to a first party bad faith case. Certainly if this procedure is authorized in the context of a third party bad faith case, it is no less compelling in a first party bad faith case. Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179 (Fla. 1994); Clough v. Government Employees Ins. Co., 636 So.2d 127 (Fla. 5th DCA 1994).
If the insurer disputes that the settlement included an agreement to litigate the bad faith claim or maintains that the settlement expressly prohibited pursuit of the bad faith claim, those matters are for affirmative pleading and proof rather than matters which deprive the trial court of subject matter jurisdiction. There is no question that the trial court has subject matter jurisdiction. See Cunningham. All statutory prerequisites have been alleged. The complaint is amendable to state a cause of action. Imhof. The trial court here did not have the benefit of the decisions of the supreme court in Imhof and Cunningham when it entered the order of dismissal.
In accord with the above, the order of dismissal is reversed and this cause is remanded for further proceedings consistent herewith.
ANSTEAD and STEVENSON, JJ., concur.
NOTES
[1] At the time the complaint was filed, section 624.155, Florida Statutes (Supp. 1988) was in effect. Except for the addition of subsection (7) in 1990, which has no substantive bearing on this case, the wording of this section remains unchanged.
[2] Section 627.727 was amended in July 1992 to add subsection (10), which clarifies recoverable damages in actions brought under section 624.155. Subsection (10) reaffirms existing legislative intent, and as such, is remedial and applies retroactively. Chapter 92-318, § 80 Laws of Florida.
[3] Our decision, however, is not meant to prevent the parties from conditioning a settlement on a release of all claims. That would be a matter between the parties rather than a judicially imposed requirement.