810 So.2d 1076 (2002)
FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY, Petitioner,
v.
Nicholas Frank COPERTINO and Nicholas T. Copertino, Respondents.
No. 4D01-2858.
District Court of Appeal of Florida, Fourth District.
March 20, 2002.
*1077 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, Greg M. Gaebe of Gaebe, Murphy, Mullen & Antonelli, Coral Gables, J. Michael Burman of Burman, Critton, Luttier & Coleman, North Palm Beach, and Donald H. Partington of Clark, Partington, Hart, et al., Pensacola, for petitioner.
*1078 Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., and Louis M. Silber of Silber & Valente, West Palm Beach, for respondents Nicholas Frank Copertino and Nicholas T. Copertino.
Gary E. Sherman of Law Offices of Gary E. Sherman, P.A., Fort Lauderdale, for respondents Maribel Farinas and Margarita Farinas.
Brian J. Glick of Glick & Retamar, Boca Raton, for respondents Susan Walker, Irving Slosberg, Rochelle Slosberg, Emily Slosberg and Ligia Gallego.
WARNER, J.
By this petition for certiorari, petitioner, Florida Farm Bureau ("FFB"), seeks to quash a circuit court order requiring it to produce two memoranda prepared by its employees during litigation over insurance coverage for claims arising from an automobile accident involving multiple deaths and injuries. FFB insisted that the memos were protected work product. The court ordered their production based upon Allstate Indemnity Co. v. Ruiz, 780 So.2d 239, 240-41 (Fla. 4th DCA), rev. granted, 796 So.2d 535 (Fla.2001), which held that documents prepared "during the normal course of evaluating a claim" are distinguishable from documents "prepared in `anticipation of litigation'" and are therefore discoverable in a bad faith case over that claim. Because we conclude that the facts of this case differ from Ruiz, in that the documents were prepared during litigation where the issue of bad faith was raised, we grant the petition.
This case arises from a horribly tragic accident in February 1996 in which five people died and seven people were severely injured. The accident was caused by Nicholas Copertino. FFB insured Copertino and his vehicle under a policy having limits of $100,000/$300,000. Within two weeks of the accident, FFB received claims from some of the crash victims, and its claims manager, Cliff Willis, settled three of those claims for $100,000 each, thereby exhausting the policy limits. Shortly thereafter, Willis and his claims adjuster, John Potter, received letters from attorneys representing the estates of two of the other victims advising them that FFB's payment of only three claims "smacks of bad faith."
FFB, having exhausted its limits and potentially facing eight additional claims, filed a declaratory judgment action in July 1996. It recited its policy terms, the coverage limits, and the fact that it had exhausted its limits by paying the three claims. It requested a declaration that it did not have a duty to defend or indemnify Copertino with respect to any pending or future claims arising out of the accident. In December 1996, several of the victims intervened, including Maribel Farinas (who was rendered a quadriplegic as a result of the accident), Emily Slosburg (who was also injured), and the estates of Margauz Schehr, Dori Slosburg, and Carolina Gil. Each filed an answer to the complaint in which they raised as affirmative defenses both common law and statutory bad faith, asserting that FFB had failed to investigate or evaluate all of the claims. The intervenors, except Farinas, also filed a civil remedy notice pursuant to section 624.155, Florida Statutes (1995), for statutory bad faith. Section 624.155 requires a person to give the Department of Insurance and the insurer sixty days notice of intent to initiate litigation. See § 624.155(2), Fla. Stat. (1995). In December 1997, all of the intervenors, except Farinas, filed a complaint against FFB for insurer bad faith. Farinas pursued a civil lawsuit against Copertino and received a judgment. She then filed a bad faith complaint against FFB in October 2000.
Sometime in September 1997, after the answers had been filed and the civil remedy notices had been sent, two internal *1079 FFB memoranda were generated, one from Willis to Potter and one from Potter to Willis. They concerned when Potter knew Farinas was a quadriplegic. According to Willis' affidavit, "these documents were generated at the request of legal counsel and prepared for and in anticipation of pending `Bad Faith' claims in this case." Farinas and the other intervenors learned about these memoranda in the depositions of Potter. Once their existence was revealed, the intervenors and Copertino moved to compel their production. The trial court ordered their production, prompting this petition.
Ordinarily, "an insurer's claim and litigation files constitute work product and are protected from production." Ruiz, 780 So.2d at 240. However, this general principle does not follow "when an insurance company is sued for bad faith." Id.
In bad faith suits against insurance companies for failure to settle within the policy limits, all materials in the insurance company's claim file up to the date the judgment in the underlying suit are obtainable, and should be produced when sought by discovery. Additional memos or documents in the file after date of the judgment can be obtained with a showing of good cause.
Discovery of the insurer's claim file and litigation file is allowed in a bad faith case over the objections of the insurer that production of the file would violate the work product or attorney/client privilege. The rationale ... is because the injured third party "stands in the shoes" of the insured party in a third party bad faith case and the insurer owed a fiduciary duty to its insured.
Dunn v. Nat'l Sec. Fire & Cas. Co., 631 So.2d 1103, 1109 (Fla. 5th DCA 1993) (citations omitted). It follows that where there is no fiduciary duty and the interests of the insurer and the third party are adverse, the insurer may rely on the privileges.
The trial court granted the motion based upon Ruiz. However, Ruiz is distinguishable. Allstate's agent had deleted one of Ruiz's vehicles from the policy by mistake. Shortly thereafter, Ruiz had an accident while driving the deleted vehicle, and Allstate denied coverage. Ruiz filed suit alleging bad faith. Allstate then extended coverage the following month. The opinion noted that the coverage issue had been resolved when Ruiz moved to compel production of Allstate's claim and investigative file. On review of an order compelling production, we adhered to our prior rulings and distinguished "between material prepared during the normal course of evaluating a claim and materials actually prepared `in anticipation of litigation.'" Ruiz, 780 So.2d at 241. We examined the documents and concluded that the trial court correctly ordered production of some of the documents, but that some were prepared in anticipation of litigation. See id.
In this case, the memoranda upon which work product is asserted were actually created during litigation over the bad faith issue. Not only had all of the intervenors asserted affirmative defenses raising bad faith by FFB in handling the underlying claims, most of the intervenors had sent notices of civil claim remedies, a condition precedent to any bad faith suit. This was not a case where bad faith litigation was simply foreseeable-it was actually being litigated at the time the memoranda were made. Moreover, according to the deposition testimony, the subject of the memoranda was the time when the claims adjuster, Potter, discovered that Farinas was a quadriplegic. The timing of Potter's discovery is material to the question of whether FFB failed to properly investigate and evaluate the claims, which were subjects raised in the affirmative defenses. *1080 Further, Willis' affidavit states that the memoranda were made at the request of legal counsel in connection with the bad faith litigation. We therefore hold that because these documents were prepared in connection with ongoing bad faith litigation, they are protected by the work product doctrine.
Because of this, Harper v. Auto-Owner's Insurance Co., 138 F.R.D. 655 (S.D.Ind.1991), the case primarily relied upon by the intervenors, is inapposite. In that case, the documents being sought were prepared prior to litigation being instituted, and the case discussed what constituted preparation "in anticipation of litigation." Here, the parties have gone beyond the anticipation to the lawsuit itself.
The respondents also claim that the court could have released these two documents on the basis that they had established a substantial need for such documents, an exception to the work product rule. Florida Rule of Civil Procedure 1.280(b)(3) permits the discovery of documents prepared in anticipation of litigation or for trial only where the requesting party shows a need for "the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." However, as FFB notes, "`inconsistencies in testimony and discrepancies are not a basis to compel production' of work product materials." Nat'l Car Rental Sys., Inc. v. Kosakowski, 659 So.2d 455, 457 (Fla. 4th DCA 1995) (quoting Healthtrust, Inc. v. Saunders, 651 So.2d 188, 189 (Fla. 4th DCA 1995)).
In this case, both Willis and Potter testified at depositions. From the excerpts provided to us, it appears Willis admitted that, at the time FFB made the three settlements which exhausted the policy limits, FFB did not know that Farinas was a quadriplegic and they had not investigated or evaluated her claim or any of the others. In Potter's deposition, he was asked whether, at the time the settlements were made in March 1996, he was "curious" about the condition of Farinas. He responded that he did not remember his thoughts about her condition. However, he testified that he did not inquire about her injuries either verbally or in writing. He had learned that she had a back injury, which he interpreted to be something like a herniated disc. He did not learn that she was a quadriplegic until later.
It appears to us that, with respect to the bad faith issues, respondents have received the "substantial equivalent" of the requested memoranda from the depositions taken. The witnesses testified that they did not know and did not bother to inquire about Farinas' condition prior to paying out the policy limits to other claimants. Because the allegations of bad faith concern FFB's conduct prior to the exhaustion of the policy limits, it would not matter whether Potter found out about Farinas' condition one day, one week, or one month later. The theory of the bad faith claim is that FFB exposed its insured to substantial liability by its settlement of only three claims of lesser monetary value when there were larger claims which were neither investigated nor evaluated. Therefore, based upon the record before us, the intervenors have failed to show that they have not obtained the substantial equivalent of the requested memoranda from other sources.
The petition is granted, and the order compelling production of the two memoranda is quashed.
FARMER and STEVENSON, JJ., concur.