SAWAYA, J.,
dissenting.
This court today has declared void a jury verdict rendered in an uninsured motorist (UM) case brought against Safeco Insurance Company of Illinois because it refused to timely pay the uninsured motorist benefits under the policy it issued to the injured insured, Adrian Fridman. That verdict declares the full measure of the damages suffered by Fridman to be $1,000,000. In reaching its decision, the majority erroneously concluded that Frid-man did not have a pending bad faith claim and if he did, he should have pled it in the complaint filed in the UM case. Because he did not, the majority holds that Safeco had the right to confess judgment for the policy limits of $50,000 shortly before trial and, based on the mootness doctrine, end Fridman’s right to have the jury determine the full extent of his damages.
The majority has misread the Notice of Civil Remedy filed by Fridman; the pleadings filed in this case; and the provisions of sections 627.727 and 624.155, Florida Statutes (2007). In addition, the majority has failed to apply the numerous decisions rendered by the Florida Supreme Court that hold that the jury in a UM case is to determine the full extent of the injured victim’s damages prior to the filing of any bad faith action. The majority has also misapplied the mootness doctrine. I strongly believe that Fridman had the right to have the jury determine the full extent of his damages, and he properly exercised that right. I do not believe it should be taken away by declaring the jury verdict void. I, therefore, respectfully dissent.

I. Factual and Procedural Background

After Fridman was involved in an accident with an underinsured tortfeasor wherein he sustained serious injuries, as evidenced by the jury verdict rendered in the amount of $1,000,000, Fridman demanded payment from Safeco in the amount of $50,000, which was the uninsured motorist limits under the policy. That demand was made on October 13, 2008, and after Safeco refused to comply, Fridman filed a Civil Remedy Notice of Insurer Violations pursuant to section 624.155(3)(a), Florida Statutes (2007), as a condition precedent to bringing a bad faith action against Safeco. The record does not reveal any response made by Safeco to that notice. When Safeco did not settle *22 within the 60-day period provided under the statute, Fridman filed the underlying UM action against Safeco on April 29, 2008. The litigation proceeded and a trial date was finally set for March 28, 2011. A pretrial date was set for March 21, 2011, and discovery was to close on March 20.
Then, on January 25, 2011, shortly before trial, Safeco served Fridman with a notice to attend a compulsory medical examination (CME) on February 28, ostensibly to examine the results of Fridman’s surgery to repair the herniated discs he suffered as a result of the accident. Frid-man objected to the CME, arguing that Safeco was engaging in last-minute discovery in an attempt to delay the case and that the examination was scheduled in the wrong county. Safeco then filed a motion to continue the case, which was granted.
Fridman subsequently filed a motion to place the case back on the trial docket. That motion was granted, and the trial court entered a pretrial order rescheduling the case for trial. Shortly thereafter, Safeco filed its motion to confess judgment, arguing that it admitted it owed the policy limits and that confession of judgment did away with the need for a trial. Fridman specifically argued that he had a right to have a jury determine the amount of his damages and that an excess judgment could be entered that would entitle Fridman to damages in that amount in the bad faith action he planned to file. The trial court denied Safeco’s motion to confess judgment, reasoning that under section 627.727(10), Florida Statutes (2007), Fridman had a right to pursue a verdict in excess of the policy limits. The case proceeded to trial and the jury returned a verdict for damages totaling $1,000,000. Safeco now attempts to rid itself of the verdict by appealing the order denying Safeco’s motion to confess judgment. I believe the trial judge was eminently correct in allowing the jury to render its verdict and that the majority is wrong to take that verdict away. The bases for my conclusion are addressed seriatim.

II. The Bad Faith Claim: The Civil Remedy Notice and Sections 624.155 and 627.727(10), Florida Statutes

The reasoning of the majority opinion is infected with the erroneous notion that the underlying suit Fridman filed was nothing more than a case seeking UM benefits and that there was no pending claim for bad faith. That notion is embodied in the part of the majority opinion which states that when Safeco attempted to confess judgment in the amount of the policy limits, the issues between the parties “as framed by the pleadings” became moot because there was no count in the complaint for bad faith and hence no pending claim for bad faith. I totally reject that notion.
It is obvious the majority has misread the pleadings in this case and the provisions of the bad faith statute found in section 624.155, Florida Statutes. “To proceed in a claim for bad faith an insured must send a notice pursuant to section 624.155.” Vest v. Travelers Ins. Co., 753 So.2d 1270, 1275 (Fla.2000). Prior to filing the UM suit, Fridman filed a Civil Remedy Notice under section 624.155, specifically stating that “this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.” That statement is necessarily included in Civil Remedy Notice forms in order to comply with section 624.155(3)(b)5., Florida Statutes. The notice also lists the violations Safeco committed and the damages Fridman incurred in the accident with the tortfeasor. Moreover, there is nothing in the record to indicate that Safeco filed a response to the notice, and the courts have held that failure to respond raises a presumption that the insurer acted in bad *23 faith. Imhof v. Nationwide Mut. Ins. Co., 643 So.2d 617, 619 (Fla.1994) (“An insurer’s failure to respond within the sixty-day period will create a presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond.”), receded from on other grounds, State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 63 (Fla.1995).[4] As the court in Vest indicated, Fridman was proceeding in a claim for bad faith and notified Safeco of his claim prior to filing the UM case. There is no way that Safeco can argue, and indeed it does not argue, that it was not put on notice prior to the UM suit being filed of Fridman’s bad faith claim. Moreover, when Safeco did tender its policy limits and attempt to confess judgment years into the litigation, and after it requested a continuance of the scheduled trial date, Fridman argued that he had a right to seek a judgment in excess of the policy limits in accordance with section 627.727(10) for the bad faith action he planned to file.
The majority has also misread the provisions of section 627.727. When Fridman filed his complaint, he specifically alleged that he “is entitled to recover damages from the defendant, Safeco Insurance Company of Illinois, in accordance with the provisions of § 627.727, Florida Statutes, and the terms of the policy ...” and, in the prayer for relief, Fridman specifically “demands judgment in excess of $15,000.00 for damages against defendant, Safeco Insurance Company of Illinois plus costs and pre and post judgment interest and further demands trial by jury.” In the answer filed by Safeco, it specifically alleged that “this action is subject to Florida Statute, Section 627.727.” That statute specifically allows for the recovery of damages in excess of policy limits. § 627.727(10), Fla. Stat. (2007). (“The damages recoverable from an uninsured motorist carrier in an action brought under section 624.155 shall include the total amount of the claimant’s damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney’s fees and costs, and any damages caused by a violation of a law of this state.”). Moreover, section 624.155 similarly provides that damages reasonably recoverable in a bad faith action “may include an award or judgment in an amount that exceeds the policy limits.” § 624.155(8), Fla. Stat. (2007).
Fridman could not have included a count for bad faith in the complaint, as the majority seems to require, because the courts have repeatedly held that the bad faith action must be instituted after the full extent of the insured’s damages have been determined in the UM litigation. Had Fridman included a count for bad faith, it would have been dismissed or abated. See *24 Allstate Indem. Co. v. Ruiz, 899 So.2d 1121 (Fla.2005); Imhof; State Farm Mut. Auto. Ins. Co. v. Tranchese, 49 So.3d 809 (Fla. 4th DCA 2010); see also Gen. Star Indem. Co. v. Atl. Hospitality of Fla., LLC, 93 So.3d 501 (Fla. 3d DCA 2012). Therefore, Fridman filed his Civil Remedy Notice and specifically pleaded damages be awarded to him in excess of $15,000 and pursuant to section 627.727, Florida Statutes, which governs uninsured motorist coverage and damages.
I find the majority’s reasoning and analysis of the Civil Remedy Notice and the pleadings filed in this case strikingly odd because it travels in a circle that revolves in the wrong direction. The majority begins its analysis by embracing the fallacious notion that Fridman did not file a claim for bad faith, despite the Civil Remedy Notice Fridman filed prior to suit. As the majority recognizes, Fridman did not incorporate a bad faith claim in a count in the complaint because it would have been improper for him to do so and would have resulted in dismissal or abatement of that claim so the UM case could proceed to trial unburdened with the bad faith issue. Therefore, Fridman filed the bad faith claim the only way he properly could by serving Safeco with the Civil Remedy Notice but because that claim was not included in the complaint, the majority does not recognize it as a bad faith claim. And yet, remarkably, the majority recognizes the propriety of excluding it from the complaint in the first instance.
As a component of that circular reasoning and analysis, the majority cites Nationwide Mutual Fire Insurance Co. v. Voigt, 971 So.2d 239 (Fla. 2d DCA 2008), but that case is clearly distinguishable from the instant case and offers no prece-dential value for declaring a jury verdict in excess of the policy limits void. In Voigt, and in every case cited therein, a claim of bad faith had not been raised in a Civil Remedy Notice under section 624.155 and the complaint filed in each of those cases only sought benefits in accordance with the UM policy. Hence, unlike the instant case, there was nothing in those cases to indicate that a bad faith action was on the horizon. Voigt simply stands for the general rule that when a verdict is rendered in excess of the policy limits, a judgment in the UM case should be entered for no more than the policy limits, and that is exactly what the trial judge did in the instant case. But neither Voigt nor any of the cases cited therein hold that the jury verdict should be declared void.
To conclude that Fridman did not have a valid bad faith claim at the time he filed his UM case is to misread the Civil Remedy Notice he filed pursuant to section 624.155, the provisions of section 627.727, and the pleadings. Moreover, that conclusion disregards what is clearly evident from the entire record in this case and the very reason Safeco confessed judgment when it did — to prevent a trial and a resulting excess judgment that would be used in the bad faith trial it knew Fridman was going to file. Fridman did have a bad faith claim that he filed in conjunction with, but not conjoined to, the UM case and he pursued that claim just as the courts have directed.

III. The Florida Courts Require the Full Extent of the Damages be Determined in the UM Case as a Predicate to a Bad Faith Action

Florida courts have made it clear that a prerequisite of a bad faith action is a prior determination of the full extent of the insured’s damages in the UM litigation. In Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So.2d 1289, 1291 (Fla.1991), the court held, “Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the *25 extent of the plaintiffs damages, a cause of action cannot exist for a bad faith failure to settle.” Blanchard involved a UM claim filed by an injured insured against his insurer. After the insurer refused to make a good faith offer to settle the UM claim, the insured filed suit and the case proceeded to trial, resulting in a verdict in favor of the insured. When the insured subsequently filed his bad faith action, the insurer moved to dismiss, contending that the bad faith action had to be asserted in the damage action previously filed and concluded. The court rejected that argument, holding that resolution of the prior suit and a determination of the extent of the insured’s damages were prerequisites to the bad faith action.
Blanchard was followed by the court’s decision in Imhof, which is another UM case. In Imhof, the court was confronted with the task of answering the following certified question:
IS AN ACTION FOR BAD-FAITH DAMAGES PURSUANT TO SECTION 624.155(1)(B)(1), FLORIDA STATUTES, BARRED BY BLANCHARD v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, 575 So.2d 1289 (Fla.1991), WHERE THE COMPLAINT FAILS TO ALLEGE THAT THERE HAD BEEN A DETERMINATION OF THE EXTENT OF APPELLANT’S DAMAGES AS A RESULT OF THE UNINSURED TORTFEASOR’S NEGLIGENCE?
643 So.2d at 617. In answering this question in the affirmative, the court held:
In Blanchard we held that “[a]bsent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiffs damages, a cause of action cannot exist for a bad faith failure to settle.” 575 So.2d at 1291. In the instant case, Imhof failed to allege in his complaint that a determination of his damages had been made. Thus, the trial court correctly dismissed the complaint for failure to state a cause of action.
Id. at 618.
The decisions in Blanchard and Imhof were followed by the decision in Vest, wherein the court reapplied its holding in Blanchard that “ ‘[a]bsent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiffs damages, a cause of action cannot exist for a bad faith failure to settle.’ ” 753 So.2d at 1273 (quoting Blanchard, 575 So.2d at 1291) (emphasis omitted). The issue in Vest as it relates to the holding in Blanchard is whether damages that occurred prior to the determination of the extent of the insured’s damages, which is the precondition to the bad faith action, may be recoverable in the subsequent bad faith action. The court held that Blanchard should not be construed to mean that only damages that occur after the bad faith claim ripens under Blanchard are recoverable. Specifically, the court reaffirmed the holdings in Blanchard and Im-hof and explained:
We continue to hold in accord with Blanchard that bringing a cause of action in court for violation of section 624.155(1)(b)1 is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract. This avoids the problem Blanchard dealt with, which was the splitting of causes of action. However, a claim brought prematurely is not subject to a summary judgment. Such a claim should be dismissed as premature.
753 So.2d at 1276.
The courts have applied the rule adopted in Blanchard and its progeny beyond the context of UM cases by holding in first party bad faith actions in general that it is a precondition to filing suit that *26 the actual extent of the loss be determined in the underlying damage action. In Doan v. John Hancock Mutual Life Insurance Co., 727 So.2d 400, 402 (Fla. 3d DCA 1999), for example, the court applied Blanchard to a breach of contract action involving a disability policy. In applying Blanchard and holding that the bad faith action was premature until the damage action resolved the full extent of damages, the court recognized that Blanchard
held that “[ajbsent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiffs damages, a cause of action cannot exist for bad faith failure to settle.” Id. at 1291. See also Imhof v. Nationwide Mut. Ins. Co., 643 So.2d 617 (Fla.1994). Since Blanchard, this Court has decided a number of cases consistently therewith. See Liberty Mut. Ins. Co. v. Cook, 696 So.2d 497 (Fla. 3d DCA 1997) (homeowner’s insurance claim); Utah Home Fire Ins. Co. v. Navarro, 642 So.2d 1200 (Fla. 3d DCA 1994) (homeowner’s insurance claim); Sivilla v. State Farm Mut. Auto. Ins. Co., 614 So.2d 553 (Fla. 3d DCA 1993) (automobile collision insurance claim); State Farm Mut. Auto. Ins. Co. v. Oteiza, 595 So.2d 1094 (Fla. 3d DCA 1992).
Id. Similarly, in Trafalgar at Greenacres, Ltd. v. Zurich American Insurance Co., 100 So.3d 1155 (Fla. 4th DCA 2012), the court explained:
It is well settled that a statutory first-party bad faith action is premature until two conditions have been satisfied: (1) the insurer raises no defense which would defeat coverage, or any such defense has been adjudicated adversely to the insurer; and, (2) the actual extent of the insured’s loss must have been determined. Vest v. Travelers Ins. Co., 753 So.2d 1270, 1273 (Fla.2000) (citing Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla. 1991)).
Id. at 1157.
Other decisions subsequent to Blanchard hold that settlement of the UM claim may fulfill the precondition that the extent of the damages be determined prior to commencement of the bad faith action. The majority cites to Brookins v. Goodson, 640 So.2d 110 (Fla. 4th DCA 1994), disapproved on other grounds, Laforet, and Clough v. Government Employees Insurance Co., 636 So.2d 127 (Fla. 5th DCA 1994), disapproved on other grounds, Laforet, to support its decision to void the jury verdict, but those cases are clearly distinguishable and inapplicable to the instant case because they both involved settlement agreements entered into between the insured and insurer.
In Brookins, the insured filed his Civil Remedy Notice pursuant to section 624.155, the insurer refused to settle within the 60-day period, the insured filed suit, and thereafter the parties settled when the insurer offered and the insured accepted the insurer’s tender of policy limits. When the insured subsequently filed his bad faith action, the trial court dismissed the suit “because the underlying litigation of the underinsured motorist claim was settled without a trial.” Brookins, 640 So.2d at 111. The court in Brookins reversed, concluding that the settlement agreement was sufficient to satisfy the requirements of Blanchard and Imhof. If the insured accepts the belated tender of policy limits as his damages in the UM case, the insured may nevertheless pursue a bad faith action to recover the consequential damages proximately caused by the bad faith, such as infliction of emotional distress, interest, attorney’s fees, costs, and possibly punitive damages. See Time Ins. Co., Inc. v. Burger, 712 So.2d 389 (Fla.1998); Imhof. Unlike Brookins, where the parties settled *27 the underlying UM suit, in the instant case, the insured refused to settle by refusing the offer of policy limits and confession of judgment and elected to let the jury determine the extent of his damages.
The decision in Clough, like Brookins, is distinguishable from the instant case because the insured and insurer stipulated and agreed to forego a trial by agreeing that the damages incurred by the insured exceeded the UM policy limits. Based on that stipulation, the trial court dismissed the suit so the parties could proceed to trial on the bad faith claim. Based on a misreading of Blanchard, and for that reason alone, the insured moved for rehearing, thinking that he would not be entitled to pursue his bad faith action unless the jury in the UM litigation determined the amount of his damages. This court held, like the court in Brookins, that a trial was not necessary and that an agreement between the insured and insurer regarding liability and damages would suffice as the predicate required under Blanchard.
I agree that if the parties settle or agree prior to trial regarding the damage issue in the UM case, that may suffice as the predicate under Blanchard. But there was no settlement or agreement between the parties in the instant case. When Safeco confessed judgment and offered its policy limits, Fridman specifically objected to cancellation of the trial and insisted on his right to have the jury determine the amount of damages in the UM case; neither Brookins nor Clough hold that the insurer may take that right away.
The purpose of UM litigation is to determine the damages caused by a negligent tortfeasor. It is, in essence, a personal injury action filed against the insured’s insurer, who steps into the shoes of the tortfeasor, and the litigation proceeds as if the suit was filed against the tortfeasor. See Allstate Ins. Co. v. Boynton, 486 So.2d 552 (Fla.1986). The relevant evidence relates to how the accident happened, who was at fault, how the injuries occurred, the extent of those injuries, how those injuries were treated and are to be treated in the future, the cost of the treatment, lost wages, and all of the other damage issues generally present in personal injury litigation. Thus, absent coverage issues, causation and damages to the injured insured are the primary focus of the UM litigation.
Bad faith litigation, on the other hand, is far different. The primary focus of bad faith litigation is whether the insurer, in good faith, attempted to settle the case pursuant to the dictates of section 624.155. The jury instructions reveal the issues in a bad faith action:
404.7 ISSUES ON CLAIM
The issue you must decide on (claimant’s) claim against (defendant) is whether (defendant) acted in bad faith in failing to settle the claim [of] [against] (insured) [and, if so, whether that bad faith was a legal cause of [loss] [damage] [or] [harm] to (claimant) ].
404.9 CONCLUDING INSTRUCTION WHEN COURT TO AWARD DAMAGES
If your verdict is for (claimant), the court will award damages in an amount allowable under Florida law.
In re Standard Jury Instructions In Civil Cases-Report No. 09-01, 35 So.3d 666, 723 (Fla.2010) (emphasis omitted). The instruction on damages reflects that the damages have already been determined in the underlying UM litigation. Examples of damages to be determined by the bad faith jury may include damages for infliction of emotional distress and punitive damages.
Not only are the issues in a bad faith action different, the evidence presented is *28 far different than the evidence presented in UM litigation. In bad faith litigation, the relevant evidence pertains to how the claim was handled by the insurer in fulfillment of its good faith duties to its insured and the claims files generated during the claims process. In Ruiz, the court explained the evidence as follows:
Consistent with the analysis outlined, we hold that in connection with evaluating the obligation to process claims in good faith under section 624.155, all materials, including documents, memoran-da, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first-party bad faith action. Further, all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection. See Fla. R. Civ. Pro. 1.280(b), 1.350; Fla. Farm Bureau Gen. Ins. Co. v. Copertino, 810 So.2d 1076, 1079 (Fla. 4th DCA 2002).
899 So.2d at 1129-30. This evidence is not discoverable until the extent of damages has been determined. See Ruiz; Atl. Hospitality, 93 So.3d at 502 (“‘Discovery directed to an insurer’s business [policies or] practices ... is premature “unless there has been a determination of liability and extent of damages owed the insured under the first-party insurance policy.” ’ ” (quoting Phoenix Ins. Co. v. Trans World Forwarding, Inc., 19 So.3d 430 (Fla. 3d DCA 2009))); Tranchese; Old Republic Nat’l Title Ins. Co. v. HomeAmerican Credit, Inc., 844 So.2d 818 (Fla. 5th DCA 2003). This evidence, which is admissible in a bad faith action, is not admissible in the UM litigation because it will improperly influence and prejudice the jury in determining the amount of compensatory damages due to the injured insured. See State Farm Mut. Auto. Ins. Co. v. O’Hearn, 975 So.2d 633, 635 (Fla. 2d DCA 2008); Progressive Select Ins. Co. v. Shockley, 951 So.2d 20 (Fla. 4th DCA 2007); Vanguard, Fire & Cas. Co. v. Golmon, 955 So.2d 591 (Fla. 1st DCA 2006); Gen. Star Indem. Co. v. Anheuser-Busch Cos., Inc., 741 So.2d 1259 (Fla. 5th DCA 1999).
Thus, the courts have held that damage issues should not be tried together with bad faith issues and that is why the courts hold that the full extent of the damages should be determined in the UM litigation, which is instituted and conducted for that very purpose. Nevertheless, the majority now requires Fridman to try the personal injury action with the bad faith action, which is exactly what the courts say should not occur. And when he does, the bad faith action will be dismissed or abated until the damages are separately determined, which is exactly what Fridman has already done. It defies logic and common sense to make Fridman do that which the courts say he should not do when he has already done that which the courts say he should do. The majority is wrong and its reliance on the mootness doctrine does not make it right.

IV. The Mootness Doctrine Is Inapplicable

Despite the well-settled rule that Fridman had the right to have the jury in the UM case decide the full extent of his damages, the majority holds that the issue of damages was rendered moot by virtue of Safeco’s belated confession of judgment in the amount of the policy limits. “An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect. A case is ‘moot’ *29 when it presents no actual controversy or when the issues have ceased to exist.” Godwin v. State, 593 So.2d 211, 212 (Fla. 1992) (citations omitted). The damage issue is not moot because a verdict in excess of the policy limits is evidence and a recoverable measure of damages in the subsequent bad faith action, and Fridman had the right to seek such a verdict in the UM case.
Moreover, an exception to the mootness doctrine provides that “an otherwise moot case will not be dismissed if collateral legal consequences that affect the rights of a party flow from the issue to be determined.” Id. As previously indicated, the courts have repeatedly held that a determination of the extent of the damages is a prerequisite to the bad faith action. See Vest; Blanchard; Shockley. A collateral legal consequence of the UM proceedings is that the confessed judgment in the amount of the policy limits, which has been foisted upon Fridman against his will by Safeco in an attempt to deprive Fridman of his right to a jury trial, is not a determination of the extent of the insured’s damages. In light of the majority ruling declaring the verdict a “nullity,” the only finding of the extent of the insured’s damages arising out of the UM case is the judgment entered in the amount of $50,000, while the jury verdict in the amount of $1,000,000, which speaks the truth about the extent of those damages, will be kept hidden from the trial court and the jury in the bad faith action. Now Fridman will have to try the damages all over again in the bad faith action and face the procedural hurdles of dismissal or abatement of the bad faith issues until the full extent of damages is once again determined.

V. Conclusion

The majority has cited no meaningful precedent to support its decision. That is because none exist, and none exist because such precedent would necessarily countenance the actions of an insurer that confesses judgment at the last hour in an effort to avoid a trial that would reveal, through the jury’s verdict, the true extent of the insured’s injuries and provide a basis to award damages in the inevitable bad faith action the insurer foresaw on the horizon. I fully agree that Safeco should have paid the policy limits, but timing is everything and in this case, Safeco should have complied with its obligations under the policy long before the eve of trial and before the 60-day time period provided in section 624.155 expired. Having failed to do so, Fridman had the right to proceed with a jury trial in the UM case and have the jury determine the full extent of his damages so he could proceed with his bad faith action. Further, the mootness doctrine is inapplicable because, despite the confession of judgment, the controversy was not fully resolved. Even if the mootness doctrine was applicable, the collateral consequence exception would apply.
As troubled as I am about what the majority has done to the verdict in this case, I am equally troubled by the precedent the majority has established. I believe that the majority decision will open the door to mischief by insurers who, with this court’s precedent in hand, may sit back while the injured insured spends all of his time and effort preparing his case for trial and, after the injured insured has hemorrhaged his resources, confess judgment for policy limits and prevent the insured from proceeding to have the jury declare the full measure of his damages as a predicate for the insured’s ensuing bad faith action. Then, the insured will have the arduous task of doing it all again when his bad faith action is filed only to encounter the obstacles of dismissal or abatement of the bad faith issues until the damage *30 issue is first resolved so the jury will not be prejudiced by the bad faith evidence when determining the measure of damages inflicted on the insured by the tortfeasor.
The trial judge understood this case and what Safeco was trying to do with its motion to confess judgment. He properly denied that motion to allow the jury trial to proceed so the jury could speak the truth about the extent of Fridman’s injuries. The trial judge’s decision should be affirmed so Fridman can pursue his bad faith action in the manner directed by the courts.

. Likewise, in Oak Casualty Insurance Co. v. Travelers Indemnity Co., 778 So.2d 483, 483-84 (Fla. 3d DCA 2001), the court wrote:
In the underlying third-party bad faith case, the defendant, Oak Casualty Insurance Company [Oak Casualty] appeals from an adverse final judgment. We affirm finding that the trial court properly gave a jury instruction pursuant to Imhof v. Nationwide Mutual Insurance Company, 643 So.2d 617 (Fla.1994), because Oak Casualty failed to respond within sixty days to the notice of violation sued upon. Imhof, 643 So.2d at 619 ("An insurer's failure to respond within the sixty-day period will create a presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond.”); see also Talat Enterprises Inc. v. Aetna Cas. & Sur. Co., 753 So.2d 1278, 1282 (Fla.2000) ("[T]he sixty-day window is designed to encourage payment of the underlying claim, and avoid unnecessary bad faith litigation.... To cure an alleged violation and to avoid civil action, an insurer must pay the claim (sometimes in excess of policy limits in the third-party context) before the sixty days expire.”).