699 So.2d 1361 (1997)
Ronnie WOODALL, et ux., Petitioners,
v.
TRAVELERS INDEMNITY COMPANY, Respondent.
No. 89052.
Supreme Court of Florida.
October 2, 1997.
Richard J. Delmond, Gainesville; and Robert J. Denson, Santa Fe Community College, Office of the President, Gainesville, for Petitioners.
Deborah C. Drylie, Gainesville, for Respondent.
Susan J. Silverman, Sarasota, for the Academy of Florida Trial Lawyers, Amicus Curiae.
Stephen E. Day and Rhonda B. Boggess of Taylor, Day, Currie & Burnett, P.A., Jacksonville, for Florida Defense Lawyers Association, Amicus Curiae.
*1362 GRIMES, Justice.
We have for review a decision certifying the following question as one of great public importance:
Whether the holding in [State Farm Mutual Automobile Insurance Co. v. Kilbreath, 419 So.2d 632 (Fla.1982),] applies when a plaintiff's UM policy contains a no-action/exhaustion clause providing that payment will be made only after the limits of liability have been used up under all applicable bodily injury liability policies.
Woodall v. Travelers Indemnity Co., 695 So.2d 735 (Fla. 1st DCA 1996). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. Because of the manner in which this case was argued, we rephrase the question as follows:
Whether the holding in State Farm Mutual Automobile Insurance Co. v. Kilbreath, 419 So.2d 632 (Fla.1982), still applies to underinsured motorist claims.
If so, what is the effect of a no-action/exhaustion clause in a plaintiff's UM policy providing that payment will be made only after the limits of liability have been used up under all applicable bodily injury liability policies?
The facts giving rise to this case are as follows. On December 15, 1987, Ronnie Woodall was injured when his motor vehicle was struck from behind by a motor vehicle operated by John D. Stewart, Jr. Stewart had bodily injury liability insurance coverage of $10,000. Woodall and his wife were insured by Travelers Indemnity Company with uninsured motorist coverage applicable to the accident of $60,000.[1] On September 9, 1993, almost six years after the accident, Stewart's insurance carrier tendered its $10,000 liability limits to the Woodalls. Four days later, the Woodalls requested authorization from Travelers to accept the $10,000 offer in settlement of the claim against Stewart. On November 12, 1993, Travelers advised the Woodalls that no underinsured motorist claim was possible because the statute of limitations had expired.
Shortly thereafter, the Woodalls filed suit against Travelers for recovery of underinsured motorist benefits. The trial court entered summary judgment in favor of Travelers on the ground that the suit was barred by the statute of limitations. The First District Court of Appeal affirmed the judgment on the authority of State Farm Mutual Automobile Insurance Co. v. Kilbreath, 419 So.2d 632 (Fla.1982), in which this Court held that a "cause of action for an uninsured/underinsured motorist claim" arises on the date of the accident "since the right of action stems from the plaintiff's right of action against the tortfeasor." Id. at 633. However, the district court of appeal questioned whether the rule of Kilbreath would apply in this case, because the Travelers policy contained a provision that payment would be made only after the limits of liability had been used up under all applicable bodily injury liability policies.
The Woodalls initially argue that unlike uninsured motorist claims, causes of action for underinsured motorist claims do not arise until either (1) the tortfeasor's liability carrier agrees to a settlement which would not fully satisfy the personal injury claim or (2) the underinsured motorist carrier breaches the contract of insurance by denying the claim.[2] They contend that section 627.727(6), Florida Statutes (1987), enacted subsequent to the Kilbreath accident but before the Woodalls' accident,[3] rendered Kilbreath inapplicable to underinsured motorist cases.
Section 627.727(6) reads as follows:
(6) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured for the limits of *1363 liability, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim against the underinsured motorist insurer, then such settlement agreement shall be submitted in writing to the underinsured motorist insurer, which shall have a period of 30 days from receipt thereof in which to agree to arbitrate the underinsured motorist claim and approve the settlement, waive its subrogation rights against the liability insurer and its insured, and authorize the execution of a full release. If the underinsured motorist insurer does not agree within 30 days to arbitrate the underinsured motorist claim and approve the proposed settlement agreement, waive its subrogation rights against the liability insurer and its insured, and authorize the execution of a full release, the injured person or, in the case of death, the personal representative may file suit joining the liability insurer's insured and the underinsured motorist insurer to resolve their respective liabilities for any damages to be awarded; however, in such action, the liability insurer's coverage must first be exhausted before any award may be entered against the underinsured motorist insurer, and any such award against the underinsured motorist insurer shall be excess and subject to the provisions of subsection (1). Any award in such action against the liability insurer's insured is binding and conclusive as to the injured person and underinsured motorist insurer's liability for damages up to its coverage limits.
The Woodalls argue that pursuant to section 627.727(6), a cause of action against an underinsured motorist carrier does not arise until it is "created" by a settlement with the liability carrier. The Woodalls suggest that it is only when the liability insurer tenders the full limits of liability and the injured party agrees to accept such limits that the status of the injured person as being underinsured is established.[4]
Under the Woodalls' theory, if the tortfeasor's liability carrier refused to settle, a cause of action would never be "created." A statute should not be interpreted so as to lead to an absurd result. We cannot think of any policy reason why a cause of action for an underinsured motorist claim should accrue at a different time from when it accrues for an uninsured motorist claim. The philosophy behind both is to provide an alternative source of revenue to compensate for the inadequacy of the tortfeasor's liability coverage. We interpret section 627.727(6) as merely setting forth a procedure to be followed when a claimant settles with the tortfeasor's liability carrier. Moreover, it is well established that an injured party may directly pursue a claim against its underinsured motorist carrier, without having to first resolve the claim against the tortfeasor's liability carrier. We instein v. American Mut. Ins. Co., 376 So.2d 1219 (Fla. 4th DCA 1979); Liberty Mut. Ins. Co. v. Reyer, 362 So.2d 390 (Fla. 3d DCA 1978); Arrieta v. Volkswagen Ins. Co., 343 So.2d 918 (Fla. 3d DCA 1977). Nothing in section 627.727(6) purports to change this. Thus, even though the cause of action for an underinsured motorist claim accrues on the date of the accident, a claimant need not run the risk of having the statute of limitations run while waiting for the tortfeasor's liability carrier to respond. We therefore conclude that under Kilbreath, the Woodalls' underinsured motorist claim accrued on the date of the accident.[5]
We now turn to those portions of the Travelers policy referred to by the court below, which read as follows:

*1364 We will pay damages that the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury suffered by the insured and caused by accident. Liability for such damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
We will make payment under this coverage only after the limits of liability have been used up under all applicable bodily injury liability bonds or policies.
(Emphasis added.) A separate section entitled "General Conditions" contained the following provision:
Legal action may not be brought against us under any coverage provided under this policy, unless the insured has fully complied with all the provisions of the policy.
(Emphasis added.)
The Woodalls argue that Travelers was not contractually obligated to make payment until the limits of all the bodily injury liability policies had been used up. Accordingly, they contend that they were simply complying with the express language of the policy by filing suit against the tortfeasor in order to collect under the tortfeasor's liability coverage. When the tortfeasor's liability carrier agreed to settle the case, the Woodalls also complied with the requirement of section 627.727(6) by submitting the settlement to Travelers for its approval. As Travelers made no objection to the settlement, the Woodalls accepted payment of the liability coverage limits and did not seek an award from Travelers until the full limits of the liability coverage were exhausted.
Travelers likens the provisions of its policy to the ones addressed by this Court in Kilbreath. Both policies contained a "no-action" clause that prevented any legal action against the insurer unless there had been full compliance with the terms of the policy. However, the other policy provision at issue in Kilbreath required the underinsured claimant first to attempt to settle the claim and, failing that, to seek arbitration. Kilbreath, 419 So.2d at 634. We held that these were remedies against the insurer and were conditions precedent to an action against the insurer that did not toll the statute of limitations. Id. In contrast, the "exhaustion clause" in this case does not contain a remedy directed toward the insurer. Rather, it requires a claimant for underinsured motorist benefits to first prosecute a claim against a third party, and there is no guarantee that this condition precedent can be successfully satisfied within the limitations period. Thus, the policy provisions at issue in this case cannot be equated with the ones in Kilbreath.
It may be that Travelers intended its exhaustion clause to mean only that its liability for underinsured motorist coverage would be over and above the tortfeasor's liability limits. However, we think it more likely that this provision would be read to mean that an injured party must pursue a claim against the tortfeasor before seeking payment from Travelers for underinsured motorist benefits. At best, the provision is ambiguous, and it is well established that ambiguities in the terms of an insurance contract will be construed against the insurer. Travelers Ins. Co. v. Bartoszewicz, 404 So.2d 1053, 1054 (Fla. 1981). Therefore, we hold that the language of the Travelers policy had the effect of tolling the statute of limitations until such time as the Woodalls received payment from Stewart's (the tortfeasor's) liability carrier.
We are singularly unimpressed with Travelers' argument that an insurance policy provision which requires an underinsured motorist claimant first to proceed against the tortfeasor's liability carrier before pursuing an underinsured motorist claim is against public policy. It is true that in cases in which insurance carriers have attempted to invoke these provisions for their own benefit, such provisions have been held to be against public policy. Weinstein; Reyer. However, it is quite a different matter to suggest that an insurer may include a provision in its policy and later claim that the insured cannot rely on the terms of that provision because the provision was invalid. Travelers cannot disavow the provisions of its own policy.
As restated, we answer the first certified question in the affirmative. As to the second question, we hold that the effect of the no-action and exhaustion clauses was to toll the *1365 statute of limitations until the insured settled its claim against the tortfeasor's liability carrier. We quash the decision below and remand for further proceedings.
It is so ordered.
OVERTON, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs specially with an opinion in which KOGAN, C.J., and SHAW, J., concur.
ANSTEAD, Justice, specially concurring.
I concur in the outcome reached by the majority in this case. However, I am also of the view that an uninsured/underinsured motorist claim is a contract claim and that Judge Cowart of the Fifth District was correct when he wrote:
When an insurance policy requires arbitration of claims and another provision specifies that no action shall lie against the company unless there has been full compliance with all terms of the policy, arbitration or its waiver or denial by the company is a condition precedent to an action on the policy. See Hall v. Nationwide Mutual Insurance Co., 189 So.2d 224 (Fla. 4th DCA 1966); Mike Bradford & Co., Inc. v. Gulf States Steel Co., Inc., 184 So.2d 911 (Fla. 3d DCA 1966). A statute of limitations on a contract action does not begin to run until an action can be brought on the contract, Briggs v. Fitzpatrick, 79 So.2d 848 (Fla.1955), and no action can be brought on a contract until all conditions precedent to recovery on the contract have occurred. Gilbert v. American Casualty Co. of Reading, Pennsylvania, 219 So.2d 84 (Fla. 3d DCA), cert. denied, 225 So.2d 920 (Fla.1969). Therefore, the statute of limitations on a contract action does not begin to run until all conditions precedent to recovery under the contract have occurred. See Employers' Fire Insurance Co. v. Continental Insurance Co., 326 So.2d 177 (Fla.1976). Consequently, since an action on an insurance policy is a contract action, the statute of limitations on an action on the policy does not begin to run until arbitration has occurred or has been waived or denied by the insurance company.
Kilbreath v. State Farm Mut. Auto. Ins., 401 So.2d 846, 847 (Fla. 5th DCA 1981), quashed, 419 So.2d 632 (Fla.1982).
The majority opinion is patently incorrect when it states in footnote 5 thereof:
We reject the Woodalls' contention that underinsured motorist coverage is more analogous to PIP coverage in which the cause of action for PIP benefits arises on the date the insurance contract is breached. State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818 (Fla.1996). A claim for PIP coverage is a first party contract claim, whereas a claim for uninsured/underinsured motorist coverage is predicated upon the cause of action against the tortfeasor.

Majority op. at 1363 n. 5 (emphasis supplied). Personal Injury Protection (PIP) benefits and uninsured/underinsured motorist benefits are both provided for in an insured's insurance contract with an insurer. If an insured brings an action claiming that the insurer has wrongfully refused to pay benefits due under the policy, that action is properly characterized as a breach of contract action.
A claim's characterization[6] should not determine whether principles of contract law will or will not factor into analysis of the claim. Indeed, the whole framework for an insured's action is predicated on a contract between the insured and the insurer, in this case for indemnification against such injury beyond that covered by the tortfeasor's liability insurance. See Berkshire Mutual Ins. Co. v. Burbank, 422 Mass. 659, 664 N.E.2d 1188, 1189 (1996) (concluding that the "basis of an insurer's obligation to pay underinsured motorist benefits `is not its actions resulting in personal injury but, rather, its contractual promise to indemnify against such injury'"). Consider the soundness and clarity of the Berkshire court's opinion:

Statute of limitations. The basis of an insurer's obligation to pay underinsured motorist benefits "is not its actions resulting *1366 in personal injury but, rather, its contractual promise to indemnify against such injury." Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 638, 585 N.E.2d 315 (1992). Hence, "an action on an uninsured motorist policy is an action in contract for indemnification," and the applicable limitations period is the six-year period prescribed by G.L. c. 260, § 2 (1994 ed.). Id. at 636, 585 N.E.2d 315. That section provides that "[a]ctions of contract ... shall ... be commenced only within six years next after the cause of action accrues." The question here is when a cause of action for underinsured motorist benefits accrues and the six-year period begins.
The general rule is that a contract action accrues at the time the contract is breached. See Boston Towboat Co. v. Medford Nat'l Bank, 232 Mass. 38, 41, 121 N.E. 491 (1919); Campanella & Cardi Constr. Co. v. Commonwealth, 351 Mass. 184, 185, 217 N.E.2d 925 (1966); Barber v. Fox, 36 Mass.App.Ct. 525, 527, 632 N.E.2d 1246 (1994). Prior to the time when the contract is violated there is no justiciable controversy, and it would be illogical to let the statute of limitations for bringing an action begin to run before the action can be brought. That violation occurred when Berkshire, in 1993, refused to submit to arbitration. Hence, Burbank's underinsured motorist claim was not barred by the six-year contract limitation period. See G.L. c. 206, § 2.
Id. at 1189. A majority of jurisdictions and several treatises analyze uninsured/underinsured motorist claims under contract law principles. Id. at 1190-91 & nn. 5-6. Therefore, I see no basis for the majority's analysis of separate provisions of the same insurance contract under different legal principles. Any analysis must begin with the fact that the insured is suing the insurer for not living up to the terms of a bargain. It makes little sense (besides being unconvincing) to treat what clearly is a breach of contract action as nothing more than a derivative from a tort claim.
In this case, uninsured/underinsured motorist benefits are provided for in the Woodalls' own first-party insurance contract with their insurer, Travelers. Those benefits are first-party insurance contract benefits that one contracting party (Travelers) has promised to pay to the other contracting party (the Woodalls) in exchange for the Woodalls' payment of a premium as consideration. Accordingly, the Woodalls' action is a "first-party contract claim", just like a PIP claim would be if brought by the Woodalls.
In my view, and apparently the view of Justices Adkins and Sundberg who dissented to this Court's decision in Kilbreath, the law of contracts should govern actions initiated under the provisions of such insurance contracts.
KOGAN, C.J., and SHAW, J., concur.
NOTES
[1] Section 627.727(3), Florida Statutes (1987), provides that the term "uninsured motor vehicle" includes one for which a bodily injury liability policy has been provided that contains limits which are less than the uninsured motorist coverage limits applicable to the injured person, i.e., an underinsured motor vehicle. The Woodalls' policy contained a similar definition.
[2] We agree with the parties that section 95.11(2), (6), Florida Statutes (1987), the five-year statute of limitations for actions on written contracts, is the applicable statute of limitations. See Burnett v. Fireman's Fund Ins. Co., 408 So.2d 838 (Fla. 2d DCA 1982).
[3] Ch. 77-468, § 30, at 2075, Laws of Fla.
[4] The statute as originally enacted used the term "uninsured," but it is clear that the statute was referring to underinsured claims. Any doubt was eliminated when the statute was amended in 1982, substituting the word "underinsured" wherever the word "uninsured" appeared. Ch. 82-243, § 544, at 1555-56, Laws of Fla.
[5] We reject the Woodalls' contention that underinsured motorist coverage is more analogous to PIP coverage in which the cause of action for PIP benefits arises on the date the insurance contract is breached. State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818 (Fla.1996). A claim for PIP coverage is a first party contract claim, whereas a claim for uninsured/underinsured motorist coverage is predicated upon the cause of action against the tortfeasor.
[6] E.g., "first party contract claim" or "predicated upon the cause of action against the tortfeasor."