753 So.2d 1270 (2000)
Jana P. VEST, Petitioner,
v.
TRAVELERS INSURANCE COMPANY, Respondent.
No. SC 93355.
Supreme Court of Florida.
March 2, 2000.
*1272 James F. McKenzie of McKenzie & Taylor, P.A., Pensacola, Florida, for Petitioner.
Cecil L. Davis, Jr. of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tallahassee, Florida, for Respondent.
WELLS, J.
We have for review Vest v. Travelers Insurance Co., 710 So.2d 982 (Fla. 1st DCA 1998), a case in which the district court misapplied this Court's holdings in Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So.2d 1289 (Fla. 1991), and Imhof v. Nationwide Mutual Insurance Co., 643 So.2d 617 (Fla.1994). Based on the conflict created by this misapplication, we have jurisdiction under article V, section 3(b)(3), Florida Constitution. See Arab Termite & Pest Control of Florida, Inc., v. Jenkins, 409 So.2d 1039, 1041 (Fla.1982); Mancini v. State, 312 So.2d 732 (Fla.1975).

FACTS
In 1995, Dr. Thomas Vest was killed in an auto accident involving an underinsured motorist. Dr. Vest was insured by respondent Travelers Insurance Company (Travelers) with an underinsured (UM) motorist policy in the amount of $200,000. On March 28, 1995, petitioner Jana P. Vest (Vest) notified Travelers that the tortfeasor's insurer had tendered its policy limits of $1.1 million in settlement of her wrongful death claim. Vest requested authorization to accept those limits and demanded that Travelers pay its $200,000 in UM benefits.
After filing a Civil Remedy Notice of Insurer Violation with the Department of Insurance on May 30, 1995, Vest filed suit on August 9, 1995, claiming Travelers had refused to settle and that Travelers had acted in bad faith in failing to pay its policy limits. Travelers filed its first motion for summary judgment, stating that no UM claim had been perfected because the complaint failed to allege there had been a determination as to the extent of Vest's damages and that Vest had not settled her claim with the tortfeasor.
At some time during this litigation, Travelers approved a settlement between Vest and the tortfeasor in accordance with section 627.727(6)(a), Florida Statutes. An order approving the settlement was entered by the circuit court on January 12, 1996. On March 12, 1996, Travelers paid Vest its UM policy limits of $200,000.
Travelers filed another motion for summary judgment on the bad-faith claim. The trial court granted the motion, finding that Vest was not legally entitled to recover UM benefits until she had settled with the tortfeasors and that upon settlement Travelers had duly paid its policy limits.
On appeal, the district court acknowledged that the trial court was wrong concerning Vest not being legally entitled to recover UM benefits until she had settled with the tortfeasor's carrier. The long-standing rule is in accord with the district court's acknowledgment of the trial court's error. In Woodall v. Travelers Indemnity Co., 699 So.2d 1361 (Fla.1997), we stated that "it is well established that an injured party may directly pursue a claim against its underinsured motorist carrier, without having to first resolve the claim against the tortfeasor's liability carrier." Id. at 1363.
The district court went on to state that the case which was before it had progressed past that erroneous ruling by the trial court to the issue of count II of Vest's complaint. The district court determined that the issue of count II was whether Vest had a cause of action for bad faith under section 624.155(1)(b)1, Florida Statutes. In the district court's view this issue centered upon when there had been a determination of the extent of damages. The district court affirmed the trial court's decision that there was no cause of action for bad faith until there was a settlement with the tortfeasor and that payment had been made within sixty days of that settlement.
*1273 The district court decided that Vest had no cause of action based upon this Court's decisions in Blanchard and Imhof. The district court stated, "Those cases hold that an action for bad faith damages requires a prior determination of the extent of damages suffered by the plaintiff as a result of the uninsured (or underinsured) tortfeasor's negligence." Vest, 710 So.2d at 984.

ANALYSIS
In Blanchard this Court held:
If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim. Thus, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle.

575 So.2d at 1291 (emphasis added).
In Imhof this Court followed by stating:
On appeal, the First District Court affirmed, finding that the complaint did not state a cause of action because it did not allege that there had been a determination of the extent of Imhof's damages. The court found that this was a requirement under Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So.2d 1289 (Fla.1991), to bring an action for insurer bad faith. Imhof, 614 So.2d at 624. However, the court certified the question of whether a failure to allege that there has been a determination of damages barred an action for bad-faith damages under section 624.155(1)(b)1. Id. at 624-25. We find that we answered the question presented in Blanchard and again answer in the affirmative.

... In the instant case, Imhof failed to allege in his complaint that a determination of his damages had been made. Thus, the trial court correctly dismissed the complaint for failure to state a cause of action.
Id. at 618 (emphasis added).
This Court's decisions in Blanchard and Imhof were followed by the Fourth District's decision in Brookins v. Goodson, 640 So.2d 110 (Fla. 4th DCA 1994). In Brookins the issue was whether a settlement constituted the "determination of damages" required by Blanchard and Imhof. The Fourth District stated:
The supreme court has recently held that to state a cause of action for first party bad faith there must be an allegation that there has been a determination of the insured's damages. Imhof v. Nationwide Mut. Ins. Co., 643 So.2d 617 (Fla. 1994). The court did not, however, require that the damages be determined by litigation, that there be an allegation of a specific amount of damages or that the damages be in excess of the policy limits. The court was not faced with the circumstance presented here where the policy limits are subsequently tendered by the insurer. The insured in Imhof received an award of damages through arbitration of an amount less than the policy limits. The amount or extent of damages was held not to be determinative of whether an insured could bring a first party bad faith claim; the purpose of the allegation concerning a determination of damages was to show that "Imhof had a valid claim." Id. at 618.
We hold that the payment of the policy limits by the insurer here is the functional equivalent of an allegation that there has been a determination of the insured's damages. It satisfies the *1274 purpose for the allegationto show that the insured had a valid claim.
. . . .
Neither in Blanchard nor more recently in Imhof does the supreme court suggest that the required resolution of the insured's underlying claim must be by trial or arbitration.... However, as noted in Blanchard, a resolution of some kind in favor of the insured is a prerequisite. There was a favorable resolution here.
Id. at 112-13.
The issue in the present case is whether an insured's damages incurred by reason of a violation of section 624.155(1)(b)1 are recoverable from the date that the conditions for payment of benefits under the policy have been fulfilled even though those damages are incurred prior to the determination of liability or the extent of damages, which is necessary for the accrual of the cause of action pursuant to Imhof and Blanchard. In this case, payment of the first-party insurance benefits was demanded in March 1995; notice as provided by section 624.155 was sent on May 30, 1995; and no payment was made within the sixty-day statutory cure period. There was no establishment of liability until a settlement was authorized with the tortfeasor on January 12, 1996. Under these facts, we conclude that the question to be answered is whether Imhof and Blanchard preclude recovery as a matter of law for bad-faith damages allegedly incurred from the date when all the conditions precedent for payment of the contractual policy benefits had been fulfilled because these damages were incurred prior to the settlement with the tortfeasor authorized on January 12, 1996. The district court held that the answer to this question is yes. However, we do not agree. This reading of Imhof and Blanchard is too restrictive.
Rather, we point out that, while not confronting the issue directly, Imhof, Brookins, and Time Insurance Co., Inc. v. Burger, 712 So.2d 389 (Fla.1998), all implicitly recognized that there can be recovery for the damages incurred from a violation of section 624.155(1)(b)1 which occurred before the determination of liability or extent of damages on the underlying insurance contract as required by our decision in Blanchard. For example, in Imhof, the damages which Imhof sought dated from his UM insurer's failure to settle in January 1989 and to respond to the statutory notice which was sent in March 1989. The arbitration in which Imhof was awarded UM damages was in March 1990. We did not hold that Imhof was prohibited from recovering damages from the date that there was the obligation on the part of the insurer to pay. To the contrary, we held that in order to state a cause of action for bad faith, Imhof had to allege that there had been a determination of the extent of his damages covered by the underlying insurance contract. However, the damages claimed as resulting from bad faith in respect to a violation of section 624.155(1)(b)1 dated to an alleged violation which preceded the determination of the extent of Imhof's damages by the arbitrator.
Similarly, in Brookins, the bad-faith claim which was allowed was for a violation of section 624.155(1)(b)1 which necessarily occurred prior to the payment of the contractual benefits which the Brookins' court held met the determination requirement of Blanchard and Imhof. Under the Brookins court's reasoning, it was this settlement by the UM insurer that provided that element of the cause of action allowing for recovery of the preexisting bad faith.
More recently, in Burger, the claim for payment of the health care provider's bill was submitted prior to August 1991. The statutory notice was sent in February 1992, and the insurer did not cure within sixty days of the notice. The insurer did not satisfy its payment obligations with respect to Burger's claim until November 1992. Burger's bad-faith cause of action *1275 was only related to the insurer's failure to pay claims that Burger submitted prior to August 1991. We recognized that claim for bad faith.
We understand that the language, "Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle," which we used in Blanchard, may be so broadly stated that our holding could be read as the district court has read it. For that reason we will here clarify.
First, we point out that Blanchard arose in the context of a certified question arising out of an issue as to whether the failure to pursue a bad-faith action for violation of section 624.155(1)(b)1 in an action for breach of the underlying insurance contract for nonpayment of benefits was the improper splitting of a cause of action. We held that it was not. Our decision in that case had to do with the timing of the bringing of causes of actions and not as to what claims could be pursued when a claim for bad faith ripened.
Second, we expressly state that Blanchard is properly read to mean that the "determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the [insured's] damages" are elements of a cause of action for bad faith. Once those elements exist, there is no impediment as a matter of law to a recovery of damages for violation of section 624.155(1)(b)1 dating from the date of a proven violation.
Therefore, in this case, the trial court erred in ruling as a matter of law that there was no claim for bad faith for acts which occurred prior to the approval of the settlement on January 12, 1996. An action prior to that settlement was premature and was subject to dismissal without prejudice. However, upon that settlement, the claim for bad-faith damages accrued from the date the violation of section 624.155(1)(b)1 ripened because at that time the final element of the cause of action occurred.
In sum, we expressly hold that a claim for bad faith pursuant to section 624.155(1)(b)1 is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay. This obligation on the part of an insurer requires the insurer to timely evaluate and pay benefits owed on the insurance policy. We hasten to point out that the denial of payment does not mean an insurer is guilty of bad faith as a matter of law. The insurer has a right to deny claims that it in good faith believes are not owed on a policy. Even when it is later determined by a court or arbitration that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith. Good-faith or bad-faith decisions depend upon various attendant circumstances and usually are issues of fact to be determined by a factfinder.
To proceed in a claim for bad faith an insured must send a notice pursuant to section 624.155. The insurer then has sixty days in which to respond and, if payment is owed on the contract, to cure the claimed bad faith by paying the benefits owed on the insurance contract. See Talat v. Aetna Casualty & Surety Co., 728 So.2d 205 (Fla. 2000). As in the present case, there is no statutory requirement which prevents the insured from sending the statutory notice before there is a determination of liability or damages. Nor is the insurer's appropriate response to that notice dependant on such a determination. The insurer's appropriate response is based upon the insurer's good-faith evaluation of what is owed on the insurance contract. What is owed on the contract is in turn governed by whether all conditions precedent for payment contained within the policy have been met. An insurer, however, must evaluate a claim based upon proof of loss required by the policy and its *1276 expertise in advance of a determination by a court or arbitration.
We continue to hold in accord with Blanchard that bringing a cause of action in court for violation of section 624.155(1)(b)1 is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract. This avoids the problem Blanchard dealt with, which was the splitting of causes of action. However, a claim brought prematurely is not subject to a summary judgment. Such a claim should be dismissed as premature.
The present action has now ripened and should have been allowed to proceed. Therefore, we quash the decision of the district court with direction that the plaintiff's count II be allowed to proceed.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.