NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


PATTI FORTUNE and JEREMY DOMIN,   )
 )
     Appellants,   )
 )
v.   )   Case No.  2D19-2209
 )
FIRST PROTECTIVE INSURANCE   )
COMPANY d/b/a FRONTLINE   )
INSURANCE,   )
 )
     Appellee.   )
_____)

Opinion filed September 4, 2020.

Appeal from the Circuit Court for Collier
County; Elizabeth V. Krier, Judge.

John H. Pelzer of Greenspoon Marder
LLP, Fort Lauderdale; and Jeremy F. Tyler
and Jonathan B. Aversano of Greyer Fuxa
Tyler Attorneys at Law, Sunrise, for
Appellants.

Jay M. Levy and Ryan L. Marks of Jay M.
Levy, P.A., Miami; and Karen D. Fultz and
Phillip J. Sheehe of Sheehe & Associates,
P.A., Miami, for Appellee.


SILBERMAN, Judge.

Patti Fortune and Jeremy Domin (the Homeowners) filed a bad faith

action pursuant to section 624.155, Florida Statutes (2017), against First Protective

Insurance Company d/b/a Frontline Insurance (the Insurer) concerning a claim that arose from losses caused by Hurricane Irma. The Homeowners appeal a final summary judgment[1] in favor of the Insurer which determines as a matter of law that the Insurer cured a Civil Remedy Notice of Insurer's Violations (CRN) by invoking the appraisal process before the CRN was filed and by paying the appraisal award more than sixty days after the CRN was filed. Because pursuing the appraisal process does not constitute a cure of the violations alleged, we reverse and remand for further proceedings.

The Homeowners' property was insured by a policy with the Insurer. After suffering losses from Hurricane Irma on September 10, 2017, they timely filed a claim with the Insurer. The Insurer investigated the loss and determined that after applying the policy's deductible and depreciation, the amount of the loss was $3,013.20. The Homeowners presented the Insurer with their public adjustor's estimate of what they alleged were the full scope of necessary repairs.

The Insurer then invoked the appraisal process pursuant to the policy on December 27, 2017. Section I of the policy contains a provision that either party may demand a mediation or appraisal of the loss if the parties "fail to agree on the settlement regarding the loss." The policy also provides that "unless there has been full compliance with all of the terms under Section I of this policy," the Homeowners cannot bring an action against the Insurer.

---

[1]The trial court's order is entitled, "Order Granting Defendant's Motion for Summary Judgment." However, the order contains words of finality, and the Homeowners are thus appealing a final summary judgment. See Walters v. CSX Transp., 778 So. 2d 396, 396 n.1 (Fla. 2d DCA 2001).

On January 8, 2018, the Homeowners filed a CRN alleging violations of section 624.155(1)(b)(1) and section 626.9541(1)(i), Florida Statutes (2017). One of those allegations was that the Insurer made a lowball offer and "flagrantly breached" its duty to attempt in good faith to settle claims, as required by section 624.155(1)(b)(1). The Homeowners asserted that the Insurer was given the opportunity to inspect the loss and was placed on notice of the severity of the damage. They contended that the Insurer failed to identify the full scope of necessary repairs that was corroborated by the public adjustor's estimate which "dwarfed" the Insurer's estimate. The Homeowners alleged that the Insurer refused to reassess its payment of benefits and the basis for payment and that the Insurer "turn[ed] a blind eye and refuse[d] to properly adjust and settle the claim."

The Insurer generally denied the allegations, claiming that it did not owe any insurance proceeds to the Homeowners under the "insurance policy at this time." Further, the Insurer stated that it had not committed any acts of bad faith and that it had sought appraisal to resolve the parties' dispute as to the amount of loss. The Insurer also asserted that it would be unable to cure any alleged violations based on the "vague and general demands" in the CRN. The Insurer did not pay any damages within sixty days of the filing of the CRN.

The Homeowners' appraiser and the neutral umpire set the amount of the loss, and an appraisal award was entered on June 1, 2018, in the total amount of $121,516.55. On July 17, 2018, the Insurer paid the net amount owed of $110,067.35.

On October 25, 2018, the Homeowners filed their complaint that sought relief for insurer bad faith under section 624.155(1)(b)(1). They alleged that the Insurer had "failed to promptly, fully, and adequately pay [the Homeowners] under the Policy and 'low-balled' [their] damage estimate." Further, they alleged that the Insurer had failed to pay damages within sixty days of receipt of the CRN, as section 624.155(3)(d)[2] requires.

The Insurer filed a motion to dismiss or, in the alternative, a motion for summary judgment, to which the Homeowners filed a response in opposition. The Insurer asserted that it "fully cured the alleged bad faith during the cure period set forth under Florida Statutes by complying with the appraisal process, which resolved the dispute between the parties and was agreed to by [the Homeowners] as demonstrated in the Appraisal Award dated June 1, 2018."

After a hearing on the Insurer's motion, the trial court determined that the Insurer was entitled to summary judgment.[3] The court's written ruling states "[t]hat, as a matter of law, [the Insurer] cured the Civil Remedy Notice of Insurer's Violations by its invocation of the appraisal process, in accordance with the applicable insurance policy, before [the Homeowners'] filing of the Civil Remedy

---

[2]In an amendment effective July 1, 2019, this provision is now contained in section 624.155(3)(c). See Ch. 2019-108, §§ 6, 18, Laws of Fla. Note also that the sixty-day period begins when the notice is electronically filed, not when it is received. See Harper v. GEICO Gen. Ins. Co., 272 So. 3d 448, 451 (Fla. 2d DCA 2019).

[3]As the Homeowners note, the Insurer did not file any summary judgment evidence contemplated by Florida Rule of Civil Procedure 1.510(c). Rather, the Insurer appears to have relied on the allegations in the complaint and exhibits to the complaint, arguing the issue as a motion to dismiss and asking for summary judgment in the alternative.

Notice of Insurer's Violation and by [the Insurer's] subsequent payment of the appraisal award." The trial court denied the motion to dismiss as moot.

On appeal, the Homeowners contend that the trial court erred in concluding that the Insurer cured the CRN merely by invoking the appraisal process and then paying the appraisal award outside the sixty-day time limit of section 624.155(3)(d). They contend that the pendency of an appraisal does not affect how an insurer must respond to a CRN.

Section 624.155(1)(b)(1), provides a civil remedy for an insurer's bad faith and provides as follows:

> (1) Any person may bring a civil action against an insurer when such person is damaged:
>
> . . .
>
> (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests[.]

The statute also provides a civil remedy for violations of specific provisions of section 626.9541. § 624.155(1)(a)(1). As a condition precedent to filing an action, the plaintiff must give the Florida Department of Financial Services and the insurer sixty days' written notice of a violation. § 624.155(3)(a). The CRN must provide the specific statutory provision allegedly violated, the facts giving rise to the violation, the names of involved individuals, any relevant policy language, and a statement that giving the notice perfects the right to pursue the civil remedy section 624.155 authorizes. § 624.155(3)(b).

The statute gives an insurer a cure period which provides that "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." § 624.155(3)(d). If a "payment is owed on the contract," the insurer can "cure the claimed bad faith by paying the benefits owed on the insurance contract." Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1275 (Fla. 2000).

The prerequisites to file a statutory bad faith action are: "(1) determination of the insurer's liability for coverage; (2) determination of the extent of the insured's damages; and (3) the required notice must be filed under section 624.155(3)(a)." Landers v. State Farm Fla. Ins. Co., 234 So. 3d 856, 859 (Fla. 5th DCA), review denied, No. SC18-292, 2018 WL 6839539 (Fla. Dec. 31, 2018). An appraisal award satisfies the first two requirements. Id.; see also Hunt v. State Farm Fla. Ins. Co., 112 So. 3d 547, 549 (Fla. 2d DCA 2013) (recognizing that an appraisal award satisfies the condition precedent of "a determination of liability and extent of damages owed" (quoting Vest, 753 So. 2d at 1276)).

Section 624.155 does not prevent the insured from sending a CRN prior to a determination of liability or damages. Vest, 753 So. 2d at 1275; Landers, 234 So. 3d at 856. The Florida Supreme Court in Vest further explained:

> Nor is the insurer's appropriate response to that notice depend[e]nt on such a determination. The insurer's appropriate response is based upon the insurer's good-faith evaluation of what is owed on the insurance contract. What is owed on the contract is in turn governed by whether all conditions precedent for payment contained within the policy have been met. An insurer, however, must evaluate a claim based upon proof of loss required by the policy and its expertise in advance of a determination by a court or arbitration.

- 6 -

753 So. 2d at 1275-76 (emphasis added). Thus, the Insurer's response was not dependent on the determination of damages, in this case by way of appraisal. The Insurer was required to evaluate the claim based upon the policy's required proof of loss "and its expertise in advance of a determination" of damages. Id. The statutory claim for bad faith "is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay." Id. at 1275. Thus, an insurer must "timely evaluate and pay benefits owed on the insurance policy." Id.; see also Bryant v. GeoVera Specialty Ins. Co., 271 So. 3d 1013, 1022 (Fla. 4th DCA 2019) (quoting Vest, 753 So. 2d at 1275). Of course, a mistaken denial of payment does not necessarily mean that the insurer acted in bad faith. See Vest, 753 So. 2d at 1275. But the issue of good faith or bad faith is usually a question for the finder of fact. Id.; see also Landers, 234 So. 3d at 860 (recognizing that it remained to be resolved as a question of fact whether the insurer acted in bad faith when it resolved the claim).

In Landers, a bad faith action regarding a sinkhole claim, Landers alleged, among other violations, "claim delay and low-balling." 234 So. 3d at 858. He "filed his CRN before the appraisal process was complete," and the insurer failed to cure the alleged violation within the sixty-day period. Id. at 860. The insurer argued that the CRN was invalid because "a condition precedent to payment— determining the amount of loss through appraisal—had not been fulfilled." Id. at 858. The appellate court disagreed and stated that "[p]reventing an insured from filing a CRN before coverage and liability have been conclusively established would frustrate the purpose of the statute by further delaying the time necessary to assess and pay

out claims and discouraging insurers from taking timely, independent action on claims." Id. at 860. For instance, Landers asserted that if the insurer had "properly investigated his claim, it would have known that the subsurface repair plan was inadequate." Id. The appellate court reversed the final summary judgment in favor of the insurer and remanded for further proceedings. Id.

Even if a policy requires the mediation or appraisal process to occur prior to suit being filed, an appraisal is not a condition precedent to the insurer fulfilling its obligation to fairly evaluate the claim and to either deny coverage or to offer an appropriate amount based on that fair evaluation. See id. at 859-60. A fair evaluation would be evidence that an insurer did not act in bad faith. But a lowball offer made in bad faith is not cured by an insurer ultimately paying what it is later found to owe via the appraisal process.

The language of section 624.155(3)(d) does not toll the cure period until an appraisal is completed. Although not applicable here, an amendment to section 624.155, effective July 1, 2019, see Ch. 2019-108, §§ 6, 18, Laws of Fla., reinforces the Homeowners' position that seeking an appraisal is not a cure to a failure to attempt to timely settle a claim in good faith. The legislature added a new section 624.155(3)(f) which states, "A notice required under this subsection may not be filed within 60 days after appraisal is invoked by any party in a residential property insurance claim." This new provision affects the time when an insured can file a CRN but does not treat an appraisal or payment of an appraisal award as a cure of any violations alleged in the CRN. And, as the Homeowners argue, if an insured cannot file a bad faith action until the appraisal award is made, see Bryant, 271 So. 3d at

1022, but the appraisal process cures a bad faith violation as a matter of law, then it places insureds in a catch-22 situation. It would allow an insurer to act in bad faith without consequence in settling claims as long as the insurer later pays the appraisal award within the time set by the insurance policy.

The Insurer asserts that when the CRN does not state the amount necessary to cure the alleged bad faith, the Insurer's invocation of the appraisal process constitutes a corrective action within the meaning of section 624.155(3)(d). Noteworthy here is that although the Homeowners' CRN did not state a specific cure amount, it did state that they had provided their public adjustor's estimate to the Insurer which covered "the full scope of necessary repairs to the direct and ensuing damages." Thus, the Insured had the public adjuster's estimate and knew the amount the Homeowners sought. Neither the statute nor this court's precedent requires the CRN to contain a specific amount sought to cure the alleged bad faith. See § 624.155(3)(b); Hunt, 112 So. 3d at 548.

The Insurer relies upon 316, Inc. v. Maryland Casualty Co., 625 F. Supp. 2d 1187 (N.D. Fla. 2008), to support its position that because the CRN did not contain a cure amount, the Insurer cured the CRN by invoking the appraisal process under the policy before the cure period expired. This court has addressed 316 and determined that a specific cure amount is not a requirement for the CRN under section 624.155(3)(b). See Hunt, 112 So. 3d at 550-551.

In addition, the issue on summary judgment that the trial court determined in 316 was that the insurer had not acted in bad faith as a matter of law. 625 F. Supp. 2d at 1195. Discussing 316, the Middle District has rejected an

insurer's argument that "316 stands for the proposition that when the insurer follows the appraisal process as set forth in the policy and promptly pays the agreed upon appraisal amount, the insurer will not be held as having acted in bad faith." Fox Haven of Foxfire Condo. IV Ass'n v. Nationwide Mut. Fire Ins. Co., No. 2:13-cv-399-FtM-29CM, 2015 WL 667935, at *5 (M.D. Fla. Feb. 17, 2015). The Fox Haven court determined that "the ruling in 316 is not that broad" and that the "court's conclusion that the insurer had acted in good faith was based primarily on the fact that the insurer 'paid almost sixty-percent of the final award in advance of the appraisal process.' " Id. (quoting 316, 625 F. Supp. 2d at 1193).

Here, the trial court did not resolve on summary judgment whether the Insurer acted in bad faith, which is generally for the finder of fact to determine. See Vest, 753 So. 2d at 1275. Instead, the trial court determined as a matter of law that the Insurer cured the CRN by invocation of the appraisal process and subsequent payment of the appraisal award after the cure period.

The Insurer contends that invoking appraisal met the cure provision which states, "No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." § 624.155(3)(d) (emphasis added). The Insurer contends that it corrected the circumstances giving rise to the violation such that a bad faith claim could not proceed. But in Vest, the Florida Supreme Court stated, "The insurer then has sixty days in which to respond [to the CRN] and, if payment is owed on the contract, to cure the claimed bad faith by paying the benefits owed on the insurance contract." 753 So. 2d at 1275. Thus, when payment is owed, the cure is paying the benefits owed. As the Homeowners

argue, the statutory language "or the circumstances giving rise to the violation are corrected" in section 624.155(3)(d) would apply to other violations not involving the payment of benefits.

For instance, the Homeowners also alleged a violation of section 626.9541(1)(i)(3)(a) for "[f]ailing to adopt and implement standards for the proper investigation of claims." The Homeowners requested that the Insurer create and implement such standards as a remedy. The implementation of such standards would show that "the circumstances giving rise to the violation are corrected." § 624.155(3)(d). But an alleged payment violation would require payment within the sixty-day cure period.

In summary, at issue here is the alleged violation of "[n]ot attempting in good faith to settle claims when, under all the circumstances, [the Insurer] could and should have done so, had it acted fairly and honestly towards its Insured, and with due regard for her or his interests." We conclude that the Insurer's invocation of the appraisal process and payment of the appraisal award after the cure period expired did not cure, as a matter of law, an alleged violation for failing to attempt to settle claims in good faith. Therefore, we reverse the final summary judgment entitled "Order Granting Defendant's Motion for Summary Judgment" and remand for further proceedings in which the Homeowners can pursue their action for bad faith. We express no opinion on the factual issue of whether the Insured acted in bad faith.

Reversed and remanded.


VILLANTI and LaROSE, JJ., Concur.