**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-13407

————————————

LAUREN WOODS,

*Plaintiff-Appellant,*

*versus*

PROGRESSIVE AMERICAN INSURANCE COMPANY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:19-cv-80517-BER

————————————

Before JILL PRYOR and LUCK, Circuit Judges, and COVINGTON,* District Judge.

COVINGTON, District Judge:

———————————

* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

Lauren Woods sued Progressive American Insurance Company ("Progressive") under Florida Statute § 624.155(1)(b), alleging that Progressive acted in bad faith in failing to settle her underinsured motorist benefits claim. Following a jury trial in the Southern District of Florida, the jury found that Woods had not proven her bad faith claim, and the court entered final judgment in favor of Progressive.

Woods appeals, seeking a vacatur of the judgment and a remand for a new trial on the ground that several evidentiary rulings prejudiced her ability to try her case. After careful review, we affirm.

## I.

Woods sustained significant, permanent injuries in a car accident with an underinsured motorist. She filed a claim with her insurer, Progressive, and invoked the underinsured motorist provision of her insurance policy. Progressive refused to pay the full policy benefit. Woods then sued Progressive in Florida state court for breach of contract and first party bad faith based on the underinsured motorist provision and served Progressive with civil remedy notices under Florida law. Progressive removed the suit to the Southern District of Florida pursuant to diversity jurisdiction. The underinsured motorist claim went to trial, and the jury awarded Woods $545,760, substantially exceeding the $300,000 policy limit. After the court entered final judgment for Woods on her underinsured motorist claim, Woods proceeded with her statutory bad faith claim before the same court.

Before trial  on the bad faith claim, the parties entered several stipulations. They consented to trial before a magistrate judge and agreed the magistrate judge would determine damages. They also included in their joint exhibit list the jury verdict from the underinsured motorist trial, and further stipulated to the following facts:

> 1. On October 15, 2021, the jury rendered a verdict in favor of Ms. Woods and against Progressive in the amount of $545,760.
>
> 2. The jury determined that Ms. Woods suffered a permanent injury as a result of the accident.
>
> 3. On November 19, 2021, Final Judgment was entered in favor of Ms. Woods in the amount of $412,208.17.

The bad faith case was tried to a jury in September 2023. At the outset, Woods made two evidentiary requests.

First, Woods sought to exclude Progressive's internal claims notes to the extent they referenced the underinsured motorist trial or expressed employee opinions about that trial. Woods argued this evidence was irrelevant to the bad faith claim and would effectively result in "relitigating the underlying trial." The court asked Woods to clarify the temporal scope of her bad faith theory and when Progressive's duty of good faith allegedly ended. The court reasoned that if Woods intended to argue bad faith conduct during or after the underinsured motorist trial, the claims notes might be relevant, but less so if her theory was confined to conduct before the trial. Woods then stipulated that her bad faith claim was limited

to Progressive's conduct before the underinsured motorist trial began. Based on that limitation, the court excluded the claims notes.

Second, Woods sought to introduce the underinsured motorist jury verdict and excess judgment that were part of the joint exhibit list, or alternatively, to have the jury instructed that an excess judgment existed. She asserted these were relevant to bad faith liability. Progressive responded that instructing the jury on the excess judgment would be unfairly prejudicial and invite speculation about its size, and further argued that if the verdict were admitted, Progressive should be allowed to introduce evidence explaining the circumstances of the underinsured motorist trial.

Initially, the court ruled that the underinsured motorist jury verdict would be excluded from evidence, but that the jury would be instructed that an excess judgment existed, without reference to its amount.

After opening arguments, Woods renewed her request to introduce the underinsured motorist jury verdict, asserting that Progressive's discussion of claims handling entitled her to present the excess judgment and jury verdict. The court rejected this argument, stating that the only issue for the jury was whether Progressive acted in bad faith before the underinsured motorist trial. Further, the court stated that the excess judgment was relevant only to damages, which the parties had agreed would be decided by the court. The court therefore excluded both the

23-13407                Opinion of the Court                5

underinsured motorist jury verdict and excess judgment entirely and declined to instruct the jury about them.

The jury returned a verdict for Progressive on the bad faith claim. Woods moved for a new trial, arguing that the evidentiary rulings unfairly allowed Progressive to relitigate issues already resolved in the underinsured motorist trial while preventing her from introducing relevant evidence. The court denied the motion. This appeal followed.

## II.

"We review the district court's rulings on the admission of evidence for abuse of discretion." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) "A district court abuses its discretion where its 'decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Id*. (quoting *United States v. Westry*, 524 F.3d 1198, 1214 (11th Cir. 2008)). "The district court's evidentiary rulings will be affirmed 'unless the district court has made a clear error of judgment or has applied an incorrect legal standard.'" *Id*. (citation omitted).

With respect to pretrial stipulations, "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). "[T]he district court has broad discretion in determining whether to hold a party to its stipulation[.]" *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir. 1987). "A district court, of course, has discretion to consider issues not raised in a pretrial stipulation or to disregard issues of law stipulated by the parties in order to grant a party relief

from a stipulation in order to prevent 'manifest injustice.'" *G.I.C. Corp. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997) (citation omitted); *see also Cent. Distribs., Inc. v. M.E.T., Inc.*, 403 F.2d 943, 946 (5th Cir. 1968) ("A stipulation of counsel originally designed to expedite a trial should not be rigidly adhered to when it becomes apparent that it may inflict manifest injustice upon one of the subscribers thereto.").[1]

"The refusal to give a requested jury instruction is reviewed for abuse of discretion." *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994).

## III.

Florida law creates a statutory bad faith cause of action against an insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests[.]" Fla. Stat. § 624.155(1)(b). "The damages recoverable from an uninsured motorist carrier in an action brought under [section] 624.155 shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state." Fla. Stat. § 627.727(9).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *Id.* at 1209.

"Through this statute, the Legislature created a first-party bad faith cause of action by an insured against the insured's uninsured or underinsured motorist carrier, thus extending the duty of an insurer to act in good faith to those types of actions." *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 59 (Fla. 1995). "The statutory obligation [imposed by § 624.155] on the insurer is to timely evaluate and pay benefits owed under the insurance policy." *Cingari v. First Protective Ins. Co.*, 377 So. 3d 1169, 1173 (Fla. 4th DCA 2024).

In Florida, courts apply a totality-of-the-circumstances test to determine whether an insurer has acted in bad faith in handling claims brought by its insured. *Laforet*, 658 So. 2d at 62–63 "Each case is determined on its own facts and ordinarily '[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury.'" *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004) (citation omitted). "[G]ood faith" generally means that an insurer must reasonably act in the best interests of its insured. *Id.* at 677 (citation omitted).

Under the good faith duty, "[t]he insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980); *see also Laforet*, 658 So. 2d at 62–63 (listing relevant factors under the totality of the circumstances standard for first-party bad faith actions such as "efforts or

measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds," "the substance of the coverage dispute or the weight of legal authority on the coverage issue," and "the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage"). In short, "an insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 8 (Fla. 2018) (citation and internal quotation marks omitted).

Woods argues that the court abused its discretion by excluding from evidence the underinsured motorist jury verdict and excess judgment. She contends that both were relevant to her bad faith claim under Florida's totality of the circumstances standard, and the excess judgment was one such circumstance that the jury should have been permitted to consider. She further asserts that exclusion of the verdict forced her to relitigate the liability already established in the underinsured motorist trial, while allowing Progressive to present evidence that the underinsured motorist jury had rejected, including the personal views of its adjusters on the severity of her injuries and the credibility of her treating physicians. Woods further argues that the court applied an improper subjective standard instead of the "totality of the circumstances" standard. Finally, she maintains that the court erred by disregarding the parties' stipulations without a specific finding of manifest injustice under Rule 16(e).

23-13407               Opinion of the Court                    9

We disagree. The court did not abuse its discretion in excluding the excess judgment and jury verdict from being presented as evidence in the bad faith trial.

As a preliminary matter, the court did not apply an improper subjective standard in making its evidentiary rulings. True, in describing the issue to be decided by the jury, the court referred to the issue of bad faith as involving "Progressive's state of mind, for lack of a better way to phrase it." But the court's remark is not inconsistent with the "totality of the circumstances" standard. Progressive's knowledge and understanding of the evidence that it had at its disposal are relevant to deciding whether Progressive acted in good faith despite failing to pay the policy limit to Woods. As the Florida Supreme Court has explained, "the denial of payment does not mean an insurer is guilty of bad faith as a matter of law." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000); *see also Fortune v. First Protective Ins. Co.*, 302 So. 3d 485, 490 (Fla. 2d DCA 2020) ("Of course, a mistaken denial of payment does not necessarily mean that the insurer acted in bad faith."). "The insurer has a right to deny claims that it in good faith *believes* are not owed on a policy." *Vest*, 753 So. 2d at 1275 (emphasis added). "Even when it is later determined by a court or arbitration that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith. Good-faith or bad-faith decisions depend upon various attendant circumstances and usually are issues of fact to be determined by a fact-finder." *Id*.

Next, Woods's reliance on *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016), to establish the relevance of the verdict and excess judgment is misplaced. There, ruling on a third-party bad faith claim, the Florida Supreme Court wrote that "if the injured third party or the insured is successful in establishing that the insurer breached the duty of good faith in handling the claim, the plaintiff is entitled to recover the full extent of the damages to which the insured was exposed, including an excess judgment." *Id.* at 1220. Woods emphasizes *Fridman*'s observation that "the jury's verdict [is] the true extent of the insured's injuries and provide[s] a basis to award damages in the inevitable bad faith action[.]" *Id.* at 1224 (citation omitted).

*Fridman* held that an excess judgment or a jury verdict in an underinsured motorist trial provides a measure of damages in a bad faith trial. But *Fridman* did not hold that such an excess judgment or a jury verdict is substantive evidence of bad faith conduct by an insurer. Instead, *Fridman* acknowledges that "just because the amount of the [underinsured motorist] verdict is a binding element of damages . . . in the bad faith case, the insurer is not precluded from explaining its actions in failing to pay the policy limits when demanded and presenting its case for why it did not act in bad faith in the handling of the [underinsured motorist] claim." *Id.* at 1230 (emphasis omitted). Indeed, "*Fridman* held that the uninsured motorist verdict was a binding *damage determination* condition precedent for [a] bad faith action." *Cingari*, 377 So. 3d at 1174. Thus, the evidentiary value of an excess judgment or underlying jury verdict generally lies in establishing damages, not liability.

23-13407              Opinion of the Court              11

Additionally,  Woods herself rendered the jury verdict and excess judgment irrelevant to bad faith liability here. Before trial, the parties agreed that the magistrate judge would decide the issue of damages for the bad faith claim such that the jury would have no role in calculating damages. The parties also jointly stipulated to the existence of the jury verdict and excess judgment from the underinsorist motorist trial as a condition precedent to the bad faith action. Accordingly, the jury in the bad faith trial did not have to decide whether an excess judgment existed, and the excess judgment and jury verdict in the underinsured motorist trial were irrelevant for the jury's deliberations in the bad faith case.

Furthermore, at the start of the bad faith trial, Woods chose to narrow her theory of bad faith liability by stipulating that Progressive's alleged bad faith conduct ended before the underinsured motorist trial began. She made this stipulation with the goal of preventing certain parts of Progressive's claims notes from being admitted as evidence. But that stipulation also eliminated any connection between Progressive's alleged bad faith conduct and the later excess judgment. Once Woods confined her theory of bad faith to conduct before the underinsured motorist trial, the jury verdict and excess judgment entered after trial were no longer part of the "totality of the circumstances" surrounding Progressive's claims handling. Indeed, the jury verdict and excess judgment would have confused the jury by implying that Progressive must have acted in bad faith because the underinsured motorist jury later found in favor of Woods in excess of the policy limits. The Florida Supreme Court has rejected just this

implication. *See Vest*, 753 So. 2d at 1275 ("We hasten to point out that the denial of payment does not mean an insurer is guilty of bad faith as a matter of law. The insurer has a right to deny claims that it in good faith believes are not owed on a policy. Even when it is later determined by a court or arbitration that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith.").

Next, Woods is incorrect in asserting that Progressive relitigated before the bad faith jury the issues previously decided by the underinsured motorist jury. Progressive presented to the bad faith jury the same evidence, including medical evaluations and opinions, that it considered when deciding not to tender the policy limits to Woods before the underinsured motorist trial. Progressive presented this evidence to explain its decision-making during the claims handling process, not to challenge the prior verdict in the underinsured motorist trial. *See id.* ("The insurer has a right to deny claims that it in good faith believes are not owed on a policy."). The sole issue in the bad faith trial was whether Progressive acted in good faith or bad faith based on the information available to it at the time. Accordingly, the evidence that Progressive presented in the bad faith trial went to the "totality of the circumstances" surrounding Progressive's pretrial claims handling, not to undermine the underinsured motorist jury's verdict.

Nevertheless, Woods insists that the court improperly excluded the parties' stipulated facts and joint exhibits from being introduced during the bad faith trial without making an explicit

"manifest injustice" finding pursuant to  Federal Rule of Civil Procedure 16(e). We find this argument unpersuasive.

The court did not permit Progressive to repudiate its stipulations—that is, to deny the existence of the underinsured motorist jury verdict or the excess judgment. Had the jury found that Progressive acted in bad faith, the court would have relied on the excess judgment stipulated to by the parties to determine damages. Rather than not holding Progressive to its stipulations, the court merely determined that the stipulations about the jury verdict and excess judgment were irrelevant to the limited issue of liability to be tried before the jury. "The question of whether evidence should be admitted is a matter of law for the trial court to determine, and that determination is not restricted by the stipulation of the parties." *Noel Shows, Inc. v. United States*, 721 F.2d 327, 330 (11th Cir. 1983).

Also important is the fact that the pretrial stipulations and joint exhibit list were agreed upon before Woods requested to exclude Progressive's claims notes from evidence and before Woods limited her theory of bad faith at the outset of the trial. At that point, Progressive argued that it would be prejudicial to allow Woods to introduce the underinsured motorist verdict while simultaneously preventing Progressive from introducing evidence about what occurred during that trial. Under those circumstances, the court acted well within its discretion in excluding the stipulation to prevent unfairness. *See Morrison,* 828 F.2d at 709

("[T]he district court has broad discretion in determining whether to hold a party to its stipulation.").

Finally, Woods also argues that the district court erred in its refusal to instruct the jury that an excess judgment existed. Because exclusion of the underinsured motorist verdict itself was proper, there was likewise no abuse of discretion in declining to issue a jury instruction that would have conveyed the same information.

## IV.

For the foregoing reasons, we affirm the district court's entry of judgment in favor of Progressive.

**AFFIRMED.**